IN THE MATTER OF THE WORKMEN'S COM-
PENSATION CLAIM OF JAMES P. LUDLOW,

*Employee-Claimant and Respondent,*

vs.

WORTHAM MACHINERY COMPANY,

*Employer-Defendant and Appellant.*

(No. 2605; May 26th, 1953; 257 Pac. (2d) 358)

332

For the employer-defendant and appellant the cause was submitted upon the brief and also oral argument of Vincent Mulvaney, of Cheyenne, Wyoming.

No appearance for employee-claimant and respondent.

OPINION

RINER, Justice:

The District Court of Laramie County, entered two orders of award in favor of a workman, one James P. Ludlow, hereinafter usually referred to as the plaintiff who was employed by the Wortham Machinery Company, subsequently designated usually as the employer, for an injury to the employee's back purporting to be

sustained January 25th or 26th, 1952. The first of these orders was for the sum of $149.03 which was rendered and entered on February 29th, 1952. Concerning this order no question appears to have been raised. The second order was rendered and entered on November 7th, 1952, after a hearing had been had on October 29th, 1952, concerning the matter and on the application of the employer aforesaid. This particular order is the one questioned in this proceeding and will be set forth in its material portions later herein. The facts in the case are not at all complicated. The medical testimony taken on the hearing of the matter is not either in conflict or disputed but is in substantial agreement as will be presently shown.

Two witnesses were sworn and gave testimony. The workman was represented by the Assistant County and Prosecuting Attorney of Laramie County and the employer by local counsel. The plaintiff was called to the witness stand first and stated among other things as follows:

He resides at present in Waterton, New York State. He was employed by the Wortham Machinery Company of Cheyenne, Wyoming, and began work in November 1951. The injury for which compensation is claimed occurred on the 25th or 26th of January, 1952. He was working on a C-frame for a bulldozer; loading it. It was over to one side and the plaintiff was lifting it on a "pry" to get it located in place on a tractor-trailer. The plaintiff was lifting on a "pry" and just got a "catch" in his back. This pain stayed for a few minutes, then it went away. It didn't bother him too much. This accident happened on a Saturday forenoon. He reported it to his employer the following Monday morning and was advised to see a doctor. He did so and consulted Dr. Joder. He worked part of a day after consulting the physician. After that he remained at home

going over to see the doctor for certain electrical treatments which he believed were "diathermy" treatments. The doctor advised him not to do any lifting. These treatments extended over a period of three months. Dr. Joder advised the workman to see Dr. Preston. This he did about two months after the accident or sometime during the latter part of February or in March. Dr. Preston examined the workman and advised him he needed rest in bed and that exercises would be helpful. He went into Memorial Hospital for a short time. The record does not seem to be very clear as to how long. The day he left the hospital he had no pain, but it came back when he began exercising. The pain was never very severe, but aggravating—like a headache. The plaintiff left Wyoming about the 15th of March, 1952, for Watertown, New York. He saw Dr. Hamilton, a doctor in that town, sometime after March 15th, 1952. This doctor gave him the same treatment that Dr. Joder did, viz: diathermy, then Dr. Hamilton, the New York doctor, advised and applied a body cast for the workman from his waist to his chest. After the workman had been in the Watertown hospital, Ludlow was not required to remain in bed and he could walk with the cast in place. The cast was kept on too long and it made Ludlow sore. It was put on the last of May and was not removed until about the middle of July and then the pain was back again. Dr. Hamilton recommended that the workman see Drs. Severance and Murray of Syracuse, New York; the latter had a brace fitted for Ludlow about August 18th, 1952. Ludlow does not wear the brace except part of the time when working around. He has not seen a doctor since then until about a month before the hearing in Cheyenne. He has pain notwithstanding he wears the brace He has been working in Watertown, New York, driving a truck. The only complaint he has from what happened at the Wortham plant is the pain he experiences.

On cross-examination he stated that he went to New York State in his own automobile which he drove some of the time, the trip being one of 1800 miles and taking six days to accomplish. His wife drove most of the time. He is not bothered much with the pain when he has the brace on. He drove a light truck for the Bailey Oil Co. in Waterton, New York, which caused pain from bouncing. When he drove a heavy truck the pain did not bother him. He worked around his mother-in-law's home in Watertown, New York, cutting and raking the lawn. Five years previous to the trouble he had at the Wortham Machinery Company plant he was driving an ambulance at the time and thought he had a back injury. He went to a doctor in Watertown, New York, and was advised "it was only a lame back" maybe a cold or something in his back. It lasted about two days and he didn't lose any work.

On redirect examination he stated that he drew compensation from Wyoming which stopped June 25th. That is, he did not get the check until July 15th, although the compensation was stopped June 25th, 1952. His compensation appears to have been at the rate of $171.00 per month, which amount he received commencing February 26, 1952. (Note: There does not seem to be any order in the record submitted here authorizing payment of that amount to be made to the plaintiff each month from February till June, 1952.) He now claims four months' compensation at that rate; that is from the time it stopped until the date of the hearing.

Plaintiff testified that the brace has not been paid for and that it was a loan to see if it would do any good before it was charged. The employee thinks that all the doctors were paid except Drs. Severance and Murray. (Note: There does not seem to be any court order authorizing payments to these doctors except the final

order directing payment to be, made to the doctors residing in New York State.) So far as the workman knows no permission was granted by the court in Wyoming for the purchase of this brace. Ludlow lived on $171.00 per month until June 25th, 1952, when the payments were stopped.

Dr. Teal was called as a witness for the plaintiff. Dr. Teal is an orthopedic surgeon practicing in Cheyenne, Wyoming. He has been in the practice for seven years. He examined Ludlow at the request of the court. Dr. Teal gave the workman a complete and thorough orthopedic examination. All of his back muscles were examined and his posture. Dr. Teal's test resulted in the conclusion that all were normal; the doctor found no limitation of motion in Ludlow's back; he could keep his knees together and could touch the floor with his fingers even when he did not have the brace on. There was no limitation found to sidewise movements. Dr. Teal noticed that the plaintiff had a shortening of his right leg. This condition had no connection at all with the alleged back injury. The plaintiff has a noticeable decrease in the size of his left thigh as compared with his right, but the entire examination was within normal limits. There was no clinical evidence —objective evidence—of any old or recent injury to his back. Verbatim the record at this point reads: "A. I know he has—the boy has a deformity of his back. I think that is his trouble. If he does have pain at present it is entirely on a postural basis. I think if he would gradually discard his brace and have infra red heat daily to his back at least once, and have, back muscle exercises that he goes through at least once daily, and elevate his right heel about a little less than a quarter of an inch, I think eventually his back trouble would entirely disappear and then he should also go back to work of some sort. Q. How long would

you say your recommended treatment—how long do you think that would take to restore his back to normalcy as you interpret it to be? A. I think that if he tried to cooperate, within a period of two to five weeks he would restore that. Q. Two to five weeks. During that time you would recommend infra red, removal of his brace, back exercises and a lift to his right heel and all of that under the supervision of a doctor, an M.D., is that correct? A. Yes, it should be supervised; he should be encouraged. After all the thing is he does have the pain as he says and under this program, if it is handled right he is encouraged; the psychological side is taken care of, I think he would improve a lot. Q. You think that eventually he would be on the upgrade, be completely normal? A. He is still a very young boy, I mean from his physical standpoint. Mr. Mulvaney: Could I have that again Doctor? A. He is still a very young man—I mean his bones, his joints, and his ligaments are all fairly elastic at this stage. They haven't gotten to the point where the bones are rigid. As to the accident, with his age in his favor, the lack of any X-ray evidence of bone pathology of old or new injury or lack of any arthritis present, it is evidence he should entirely recover; he should have recovered before this because he has had adequate treatment for his original injury." To the question of the presiding judge addressed to the orthopedic surgeon—"Do you feel as a physician that there is any relationship between the shortening of his right leg and the injury that you described to us here as having been suffered or that you found existed?" Dr. Teal answered, "No." Dr. Teal also stated that if the plaintiff would commence the treatments as suggested it would probably take not more than six or eight weeks at the most in order to cause an entire disappearance of the condition and the pain. He stated that starting immediately it is all up to the plaintiff as to what he wants to do; we

can only help him so much, then he has to help himself the rest of the way. The patient would not have to be hospitalized; the treatments could be administered on office calls. He could be instructed in the back exercises and he could do these at home. He could also get the infra red heat at home. On cross-examination, Dr. Teal stated, he felt fully convinced in his own mind that the pain from which Ludlow was suffering was due to the postural condition rather than the accident. The doctor additionally stated that the treatment he suggested was to aid a curvature of the spine and the shortening which caused the curvature; while this cannot be cured it will throw his body more into normal balance, and of course, will be easier and any strain on the other side of his lower back and his pain would disappear. That is what caused the pain in Dr. Teal's opinion. He additionally stated that the pain is a postural type of backache which is a result of a postural defect. That after this length of time as the injury was described to the surgeon and in the absence of any bone pathology at the time of the accident Dr. Teal does not see how this type of pain could still persist; that by proper back muscle exercises the plaintiff would be improving his posture and strengthening his back. The exercises the doctor prescribed would be to correct the postural defect and at the same time strengthen the patient's back, where an injury exists and loosen up the back muscles. The infra-red treatments which the doctor prescribed would be for the purpose of increasing the circulation and to release deep muscle spasm—if there is any present which you could not tell objectively. Thereafter the record reads verbatim: "A. The question was: Does the injury have anything to do with his present postural difficulty? A. And your answer was? A. The answer was 'no.' Q. They are separate, distinct injuries? A. No, one is an apparent injury and the other is a *congenital thing which he had from the*

*time he was little and probably developed as he grew."*
The doctor also testified: "From experience all you
could say is that unless he had an extremely severe in-
jury at the time, which the history does not bear out
and which the X-ray examinations didn't bear out, you
can hardly say that after this length of time that he
would still have pain with the adequate treatment that
he certainly has had." Dr. Preston although not under
oath was asked: "With reference to the continuance of
treatment, will you concur with Dr. Teal with reference
to this time, length of time it should take, the maxi-
mum, if the patient cooperates pretty well with you to
cure this condition?" Dr. Preston answered this ques-
tion "Yes." Dr. Preston in response to a question stated
that it is unlikely that the plaintiff would still have
pain after having treatments over the period of time
he has taken them. The last Dr. Preston saw of the
patient was when he was here in Cheyenne and was
advised at that time to go into the hospital and be
started on his exercises but with none of this brace
and cast on him. At this point in the record the counsel
for the defendant-employer interposed the following
objection: "he objects at this time to any further
awards since the last one for compensation and to the
payment of any further hospital, medical or other bills
on the ground that the—Dr. Teal's testimony clearly
indicates the pain which the patient is now suffering
and has for the past four or five months been suffering
is due to a postural condition, the shortening of one
leg, and can be relieved by the remedy he suggested on
the witness stand, which has nothing whatever to do
with the injury received on January 26, 1952, while in
the employ of the Wortham Machinery Company."

There after and under date of November 7th, 1952,
the court entered an order finding:

"That the monthly compensation to said employee in

the amount of $171.00 from July 15, 1952, to January 1, 1953, less seven days worked by said employee, should be approved in the total amount of $897.75 figured as follows:

5 months at $171.00 per month ........................$855.00
July 15th to July 31st, 1952 .............................. 85.50

$940.50
Less one week employed ........................................ 42.75

Amount allowed ...................................$897.75

"That the following medical bills should be approved:

"Drs. Sickles & Cosgrove, Waterton, N. Y., services after July 15, 1952.......................$ 30.00

"Drs. Severance & Murray, Syracuse, N. Y., (Services after July 15, 1952, including brace at $50.00) ......................................................$ 75.00

"The Court further finds that subsequent to said injuries on January 25, 1952, the employee has been residing in Watertown, New York, and that he is entitled to be reimbursed in the sum of $71.88 for bus transportation from Watertown, New York, to Cheyenne, Wyoming, and return and the sum of $30.00 for meals, lodging and other expenses incurred to attend this hearing.

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that there be paid to the employee James P. Ludlow from the Wyoming Workman's Compensation fund and charged to the account of the Wortham Machinery Company the following amounts:
"Drs. Sickles and Cosgrove, Watertown, N. Y.,..$ 30.00
"Drs. Severance & Murray, Syracuse, N. Y., ....$ 75.00
"Compensation from July 15, 1952, to January 1, 1953, less one week employed .................$897.75
"this is to be paid $555.75 forthwith and the balance of $171.00 for the months of November and December, 1952, as they accrue.

"IT IS FURTHER ORDERED that the employee, James P. Ludlow, be reimbursed forthwith from the Workmen's Compensation fund chargeable to Wortham

Machinery Company's account, the sum of $101.88 for transportation, meals, lodging and incidental expenses attending this hearing.

"To which ruling and order of the Court the employer excepts and exception by the court is allowed."

At the close of Ludlow's testimony and before Dr. Teal commenced to testify, Ludlow stated that he was examined by Dr. Teal the day before the hearing and by Dr. Preston two days before the hearing.

After a careful examination and study of the testimony taken on the hearing of this matter on October 29, 1952, and which is abstracted above it would appear that the trial court seems to have overlooked the exact purport of that testimony. The view of Dr. Teal who examined the plaintiff very thoroughly the day before the hearing, was that the pain or ache the workman was at present experiencing was due not to what occurred when he had been working for the Wortham Machinery Company but to a congenital defect—a shortening of the right leg causing a curvature of the spine. This defect he had when he was "little." The doctor stated definitely that there was no causal connection between the pain or ache he now has and that experienced while in the employ of the Wortham Machinery Company. Dr. Teal advised the plaintiff to have certain treatments which, if followed through with cooperation on the part of the workman, would in a comparatively short time cause the pain or ache to disappear. That the curvature of the spine caused by plaintiff's postural congenital defect will be improved though it cannot be entirely cured. It is especially to be observed that there is no testimony which contradicts or throws any doubt upon the view expressed by Dr. Teal's testimony. Indeed, Dr. Preston, who gave the plaintiff a separate examination a short time before that conducted by Dr. Teal agreed with the latter

in his conclusions. Dr. Preston seems not to have been sworn but was nevertheless questioned briefly by both the trial judge and counsel for the employer.

Again there is an additional reason which appears to us a strong one why the medical testimony given on the hearing in this matter may not be laid aside in reaching a correct disposition of this appeal. When the medical question involved is not uncomplicated and the fact finding must be done in a realm which lies most appropriately in the field of technical knowledge of medical experts, testimony of that character can hardly safely be ignored.

For example, in the case of Drakulich vs. Industrial Commission 137 Ohio State 82, 27 N.E. (2d) 932, it appeared that an employee had strained his back by accident and thereafter died a year later of cancer of the liver. In reversing the judgment of the Court of Common Pleas in favor of the wife of the workman a judgment which had been affirmed by the Court of Appeals, the Supreme Court of Ohio supported the ruling of the Industrial Commission which had denied the wife's claim for compensation. The Court of Last Resort in the State said:

"There was no lay testimony or evidence of other circumstances introduced tending to support the theory that the cancer of the liver had its origin in the injury to the decedent's back while lifting a casting. Even if there had been such evidence, it would not have been sufficient to establish the fact of casual connection. This issue presented a field of scientific inquiry where expert medical testimony is required to furnish the answer. It could not possibly be within the knowledge of lay witnesses or members of the jury. (Citing authorities.)

"The medical testimony, even if the affidavit of Dr. Schwarzell had been admitted, was insufficient to prove casual connection between the injury and the cancer

which caused death. The testimony must establish a probability, not a mere possibilty, of such casual connection. The testimony to the effect that the injury *could have* resulted in the malignancy does not meet that test." (Italics already supplied.)

The Supreme Judicial Court of Massachusetts in Green's case 266 Mass. 355, 165 N.E. 120 reached a similar result. There, the medical question was whether trauma in one part of the body could accelerate a quiescent tuberculosis of an entirely different organ.

The case of Travelers Insurance Company vs. Blazier (Tex.Civ.App.) 228 S.W. (2d) 217, 220, is also of similar purport. There an award had been made on the theory that claimant's disability was due to a heat stroke which contributed to his contraction of the disease known as poliomyelitis; nevertheless the judgment of award in the matter was reversed and the court said:

"If there had been only the testimony of appellee in the present case, with no evidence of a diagnosis of polio, it might be that the trial court, though a layman, would have been justified in finding from the evidence that a heat stroke had been suffered. But where the question to be determined was whether appellee had polio or a heat stroke, or whether he had a heat stroke which in turn contributed to or brought about polio, it is our belief that the subject was one so peculiarly within the realm of scientific knowledge that the trial court was not authorized to make a diagnosis, so to speak, contrary to that made by the only medical witness."

In Landry vs. Phoenix Utility Co., 14 La. App. 334, 124 So. 623, 624, 625, the court very frankly remarked:

"To the untutored mind of this court it would appear that a severe injury, resulting in the fracture of two ribs, one of them in two places, such as was suffered by the deceased, Landry, would have some casual relation, or would at least have contributed, to his demise,

which occurred about two months after the injury, particularly since the testimony is to the effect that he had previously enjoyed good health, and was not known to complain of any physical illness prior to the accident. This conclusion to the lay mind would seem most reasonable, but we are not privileged to indulge our impresions in a matter so technical, in view of the expert testimony in the record, which clearly preponderates to the effect that duodenal ulcers, the admitted cause of Landry's death, could not be produced as a result of external trauma. The expert medical testimony also preponderates to the effect that the trauma was not a contributing cause, some of the physicians advancing the view that the nephritis, which the autopsy disclosed as present, was most likely an important factor in the result, because, as Dr. Martin puts it, 'if there is anything in God's world that will lower a man's resistance, that will do it.' "

"The trial court, who heard the doctors testify, denied recovery upon the same ground upon which we base our conclusion, the preponderance of the expert medical testimony in favor of defendant, and, if we and our brother below have erred, the responsibility must rest with the medical profession and not the judiciary."

In the case at bar the real crucial question was whether the cause of the pain was due to the plaintiff's use of the "pry" stick in loading the heavy equipment, the task to which he had been assigned, or was due to a congenital defect, which produced an abnormal body posture, thus presenting a query in a field where medical scientific knowledge was essential to a correct solution of the problem. The latter alternative would appear to be the controlling fact, as we understand the submitted testimony.

In the employee's report of the alleged accident in this case as set forth in the record before us appears the following:

"An injured employee, while under treatment, shall not be permitted to change from one hospital to an-

other, or from one surgeon to another, without his fully setting forth the reasons for so doing and obtaining the consent of the District Court, unless he expects to pay for such change himself."

This report was signed by Mr. Ludlow, the claimant, and it must be assumed that he read and understood the foregoing requirement made by the Workmen's Compensation Department of this State, and which we think is a very reasonable and proper requirement conducive to a proper and orderly handling of cases · of this character. The record is barren of any authorization given by the District Court of Laramie County to the doctors and surgeons in New York State to treat plaintiff's injuries if any there were. It is patent there was no means provided by law for checking the alleged services they rendered plaintiff in a city some 1800 miles distant from the City of Cheyenne, where the alleged injury is claimed to have occurred. We think services rendered by non-resident surgeons should be duly authorized by our courts upon good reasons advanced before claimants should be permitted, without limitation, to employ professional medical service beyond the borders of this state. Such matters should not be left to the claimant himself to determine and to thereby fasten a liability upon the Workmen's Compensation fund of this state. It is evident so far as can be told from the record before us that they failed to discover what Dr. Teal found upon his extremely thorough and complete examination of Ludlow from an orthopedic viewpoint.

It must also be noted that the order of award questioned here allowed the plaintiff the sum of $101.88 for "transportation, meals, lodging and incidental expenses" incurred in attending the October hearing in the District Court in Cheyenne. We have not had our attention directed to any provision of the Workmen's

Compensation Law of this State which authorizes any such award.

We find in 2 Larson's Workmen's Compensation Law, p. 352 § 83.20 a quite recent and comprehensive treatise on the subject, it is said:

"Like attorneys' fees, other fees and expenses must be borne by the parties themselves, in·the absence of a statute shifting the incidence of such expenses."

We do have a section in the Workmen's Compensation Law of Wyoming which authorizes and limits attorneys' fees in matters of this character, see § 72-130 W.C.S. 1945.

Says Mr. Horovitz, a very able writer on Workmen's Compensation Law in his text "Injury and Death under Workmen's Compensation Laws," which is supported by cited cases, p. 364:

"Costs are a *creature of statute,* and in the absence of statutory costs, no right to costs exist." (Italics already supplied.)

It follows from what has been said herein that the order of award of November 7, 1952, made by the District Court of Laramie County should be reversed and the cause remanded to that court with instructions to set aside and deny the award made.

*Reversed and Remanded.*

BLUME, C. J., and HARNSBERGER, J., concur.