In the Matter of the Workmen's Compensation Claim of Arthur J. Bocek, an employee of the City of Sheridan, Wyoming.

Arthur J. BOCEK, Appellant
(Employee below),

v.

CITY OF SHERIDAN, Wyoming, Appellee
(Employer below).

No. 3628.

Supreme Court of Wyoming.

Oct. 24, 1967.

Henry A. Burgess, and Robert J. Oberst, Sheridan, for appellant (employee).

Harry F. Schwartz, City Atty., Sheridan, for appellee (employer).

Before HARNSBERGER, C. J., and GRAY, McINTYRE and PARKER, JJ.

Mr. Justice GRAY delivered the opinion of the court.

On December 9, 1966, Arthur J. Bocek filed a claim for temporary total disability under the Workmen's Compensation Law, asserting that such disability was caused by a "herniated disc" in the lower part of the back, which in turn was the direct result of an injury incurred while employed by the City of Sheridan in a covered occupation. The city controverted the claim and the basic issues resulting were whether or not claimant incurred an injury in his employment and whether such injury was the cause of the disability claimed. After a hearing in the matter, the trial court found generally for the city and entered judgment denying the claim. Claimant appeals contending, in substance, that the judgment is contrary to and not supported by the evidence.

There is little dispute in the evidence tending to show the general circumstances underlying the controversy. Claimant was employed by the city in what is commonly called the street and alley department. His assigned duties consisted in part of operating a street sweeper. He was so employed for a period of one and one-half years prior to the termination of his employment on

September 15, 1966. On April 15, 1966, claimant undertook to change the sweeper broom, which weighed around 200 pounds. In describing what occurred claimant said that when he reached down to pull up the broom "I popped my back somehow" and that he could hardly straighten up. Nevertheless, with some help from his father-in-law, he completed the job. At the time claimant told his father-in-law that "his back hurt." Claimant also said he reported the injury to his superior on the same day but that was denied. A few days later claimant went to Dr. Crider, a chiropractor, who testified that at that time claimant was in acute distress and had a great deal of pain. The doctor diagnosed the case as a "sacro-iliac dislocation" and treated it as such. Claimant also received four or five treatments from another chiropractor but he said his hip continued to bother him and "it was just kind of a dull pain that was there all the time." In late August 1966 claimant consulted Dr. Booth, a medical doctor, and complained about his hip. An X ray was taken of the pelvis and was interpreted as negative "for either arthritis or fracture or dislocation." However, the doctor decided that it was probably an arthritis of the hip, possibly due to a previous injury. Claimant was then treated for arthritis but said he got no relief. In the meantime, however, with the exception of a few days' layoff, claimant continued to perform the duties of his employment without complaint and with no outward showing of physical disability. Also—though claimant denied it—there was testimony from which the trial court could find that claimant, during the summer and early fall of 1966, participated in three sponsored motorcycle races and had taken "spills" in two of those races. As the result of the first "spill" in June claimant consulted Dr. Booth for treatment of an injury to his ankle. The "spill" in September "didn't hurt him" and he ran later in the day and won a trophy. Finally in early December claimant consulted Dr. Hagen in Billings, Montana.

Therapy was prescribed but when that failed to give relief a myelogram was performed and the X ray disclosed the herniated disc in the lower part of the back, which was later corrected by surgery. The foregoing recital of pertinent facts will be supplemented to some extent in disposing of claimant's contentions.

The principal argument offered by claimant in support of his contentions is that the only evidence relating to the injury and the cause of disability was the uncontroverted and unimpeached testimony of claimant which sufficiently established his claim, and thus the trial court erred in disregarding such evidence. In weighing that argument it is our impression, after a careful review of the record, that claimant's counsel are overly generous in the evaluation of their client's testimony. As shown above, claimant was contradicted on at least two material and important links in his chain of proof, i. e., the matter of timely notice of the injury to the city which is a strong circumstance in support of the judgment, Parkel v. Union Pac. Coal Co., 69 Wyo. 122, 237 P.2d 634, 635, and the matter of the "spills" in the motorcycle races.

■ That the latter had an important bearing upon the actual time of the injury and the causal connection between the injury and claimant's employment—which his counsel agree had to be shown by a preponderance of the evidence, and see Bemis v. Texaco, Inc., Wyo., 401 P.2d 708, 709; Columbus Plumbing & Heating Company v. Hardison, Wyo., 429 P.2d 320, 322—can scarcely be doubted in view of the only medical testimony offered at the hearing.

■ Dr. Booth, called as a witness by the city, after reciting on direct that the X ray taken in August 1966 included the lower back, both hip joints, and the pelvis, and that the area appeared entirely normal at the time, did say under cross-examination that he did not do a myelogram and it was "conceivable" that without a myelogram the X ray might miss a herniated disc. However, when he was asked if a herniated disc is an injury of which one would not be

readily aware, he answered that the patient "certainly wouldn't be aware of the diagnosis" but might have complaints and not know the cause. He said it can be received by a person as a result of lifting or pulling objects "or many other ways, too." When asked "If a person were to pull on a 200 pound broom and strain in doing it, would you have an opinion as to whether or not that might result in a herniated disc?" he answered, "It certainly could." Then on redirect he was asked whether in his opinion a herniated disc could result from a fall from a motor bike, and he answered, "Yes, I can go further than that. I think you can get it from brushing your teeth." Then when asked if it was the result of some sudden injury he said, "Sometimes it's real quick, and sometimes it develops over a period of time," and that it could have occurred at any time during the period which was involved here.

■ While we need not go so far as to hold that a causal connection must be shown by medical testimony in every case involving a claim based on a "herniated disc" —see for example Colorado Fuel & Iron Corporation v. Frihauf, 58 Wyo. 479, 135 P.2d 427, 433, et sequitur—our holding in Ludlow v. Wortham Machinery Co., 71 Wyo. 331, 257 P.2d 358, 363, disposing of a claim based upon a back injury, is entirely applicable to the circumstances here. In that case we said:

"* * * When the medical question involved is not uncomplicated and the fact finding must be done in a realm which lies most appropriately in the field of technical knowledge of medical experts, testimony of that character can hardly safely be ignored."

See also 12 Schneider, Workmen's Compensation Text, § 2532, p. 310 (Perm.Ed.).

Thus, even though we were to assume that counsel for claimant are correct in their contention that the testimony of claimant sufficiently established his claim, that could mean no more was shown in this case than a "probable" causal connection of the claimed injury to his employment. Conversely, however, the testimony of Dr. Booth, together with the other circumstances shown, was sufficient to warrant the inference that another cause of the injury was just as "probable."

■ It is the rule "that where the evidence justified either of two reasonable inferences, one favorable to the party having the burden of proof and the other favorable to his opponent, the trier of the facts should be allowed to determine which, if either, of the two inferences is more reasonable or probable, and make his finding accordingly. If the finding is in favor of the party having the burden of proof, this court on appeal will not hold that it was made by guess or conjecture, unless we can say, as a matter of law, that the inference in favor of the other party was more, or at least equally, probable." White v. Maverick Production Co., 63 Wyo. 452, 182 P.2d 818, 822.

We are not persuaded that the general finding of the trial court was erroneous as a matter of law and consequently the judgment is affirmed.

Affirmed.