**VANDEHEI DEVELOPERS, Intervenor, Fekany Enterprises, Inc., Mary Ann Tensley and Kevin Tensley, Petitioners,**

v.

**PUBLIC SERVICE COMMISSION OF WYOMING; and Cheyenne Light, Fuel and Power Company, Respondents.**

No. 89–199.

Supreme Court of Wyoming.

April 25, 1990.

Bert I. Ahlstrom, Jr., Cheyenne, for petitioner Vandehei Developers.

Edwin H. Whitehead of Whitehead, Gage & Davidson, Cheyenne, for petitioners Fekany Enterprises, Inc., Mary Ann Tensley, and Kevin Tensley.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., and Milo M. Vukelich, Asst. Atty. Gen., for respondent Public Service Com'n of Wyoming.

John A. Sundahl and George E. Powers, Jr. of Godfrey & Sundahl, Cheyenne, for respondent Cheyenne Light, Fuel and Power Co.

Before CARDINE, C.J., THOMAS and MACY, JJ., BROWN, Ret. J., and LEHMAN, District Judge.

BROWN, Justice, Retired.

Cheyenne Light, Fuel and Power Company (Cheyenne Light) sought approval from the Public Service Commission of Wyoming (PSC) to construct a transmission line in north Cheyenne, Wyoming, with a portion of the proposed line to run over and through property owned by petitioners. The PSC granted Cheyenne Light the authority to build the line and this appeal followed.

On appeal, petitioners urge three issues: Whether the actions, findings and conclusions of the Public Service Commission of Wyoming are unlawful and should be set aside:

I

For the reason that they constitute an abuse of discretion, are arbitrary and capricious, or are otherwise not in accordance with law.

II

For the reason that the Commission acted in excess of statutory jurisdiction, authority or limitations, or was lacking statutory right.

III

For the reason that the actions, findings and conclusions of the Commission are unsupported by substantial evidence.

We will affirm.

On March 15, 1988, the Laramie County Board of Commissioners (the Board) denied Cheyenne Light permission to use county rights-of-way for construction of a planned transmission line that was to run from a substation north of Frontier Mall, west along Four Mile Road and thence to Francis E. Warren Air Force Base. The Board ruled that the line could not be placed above ground because it would disrupt county residents. However, the Board stated that if the line were placed underground, authority for use of county rights-of-way would be granted.

After the Board's decision, Cheyenne Light applied to the PSC for a determination that a certificate of public convenience and necessity was not required to operate the proposed line and related facilities. In the alternative, Cheyenne Light applied for a certificate of public convenience and necessity authorizing the line to be built.

On December 8, 1988, the PSC gave public notice setting Cheyenne Light's application for public hearing. Several parties, including petitioners, intervened. On January 17, 18 and 19, 1989, the PSC held a public hearing to consider an application of Cheyenne Light to build approximately eleven miles of transmission line in north and northwest Cheyenne. The portion of the line at issue here runs from a substation north of Frontier Mall at the intersec-

tion of Powder House Road and Four Mile Road and thence west along Four Mile Road to the east boundary of Francis E. Warren Air Force Base. Authority was also sought to install necessary equipment.

On February 23, 1989, the PSC entered its order on Cheyenne Light's application. This order found that there was public need for the proposed line and related facilities; Cheyenne Light and its customers would receive increased reliability and facility-use benefits from approval of the line; and placing the line underground would expose Cheyenne Light to an extraordinary amount of expense when compared to putting the line overhead. The order further held that, based upon extensive health and medical testimony, there were no health risks involved by having the line installed above ground. The PSC rejected an underground line stating that to do so would lead to service problems, place an unreasonable burden on Cheyenne Light's ratepayers, and would cost 7.9 times more than installing the line overhead.

On March 17, 1989, a group of individuals known as the Read Tract Residents petitioned the PSC to rehear the Cheyenne Light application. The Read Tract Residents claimed insufficient notice of the original hearing and that the notice did not state that alternative routes would be considered. The PSC granted a rehearing which was held on May 1, 1989. On June 5, 1989, the PSC entered its order on rehearing stating that the line should be routed from where Four Mile Road intersects Interstate 25 directly west to Francis E. Warren Air Force Base. The original order of the PSC provided that the line go around petitioners' property. The order on rehearing provided that a portion of the line run over and through petitioners' property. On June 23, 1989, petitioners filed their petition for review with the District Court for the First Judicial District. The district court certified this matter to the Supreme Court.

■■■ In this appeal, we are governed by certain rules previously announced by this court. The Supreme Court will review the decision of an administrative agency as if it were a reviewing court of the first instance. *Exxon Corporation v. Wyoming State Board of Equalization*, 783 P.2d 685 (Wyo.1989). Petitioners have the burden of proving that the PSC's actions are arbitrary, capricious or an abuse of discretion. *Wyoming Bancorporation v. Bonham*, 527 P.2d 432, 439 (Wyo.1974), *op. supp.*, 563 P.2d 1382 (Wyo.1977), *reh'g denied*, 566 P.2d 219 (Wyo.1977). The reviewing court must examine whether the decision made by an administrative agency has been reached on relevant factors and was rational. *Tri–State Generation and Transmission Association, Inc. v. Environmental Quality Council*, 590 P.2d 1324, 1331 (Wyo.1979). Agency decisions are to be reversed only for errors of law. *Shenefield v. Sheridan County School District No. 1*, 544 P.2d 870, 874 (Wyo. 1976). Further, courts will not substitute their judgment for that of an administrative agency. *Gilmore v. Oil and Gas Conservation Commission*, 642 P.2d 773 (Wyo. 1982).

I

■■■ In the first issue raised on appeal, petitioners contend that the PSC acted in an *arbitrary* and *capricious* manner and *abused* its discretion in making the order appealed from. The terms "abuse of discretion," "arbitrary," and "capricious" are frequently used interchangeably. In this opinion we will not attempt to explain minute differences in meaning except to say arbitrary or capricious actions are ways to abuse discretion.

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986).

Petitioners contend that the PSC made its second order without substantial evidence being presented at the rehearing.

W.S. 37–2–214 (1977)[1] provides for rehearing; however, this statute does not require that new evidence be presented. A rehearing may be had if, in the judgment of the PSC, "sufficient reason therefor be made to appear." A rehearing may be proper whether or not new evidence is contemplated.

In *Utah Power & Light Company v. Public Service Commission of Wyoming*, 713 P.2d 240, 244 (Wyo.1986), we held "[a] rehearing is in the discretion of the agency and will be interfered with only for a clear abuse of such discretion." In that case, we quoted with approval the court's definition of abuse of discretion explained in *Martinez v. State*, 611 P.2d 831, 838 (Wyo. 1980):

> A court does not abuse its discretion unless it acts in a manner which exceed the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.

Petitioners do not contend that the final action of the PSC order appealed from would have been arbitrary, capricious and an abuse of discretion in any case. Their contention rather is that the PSC changed its mind and in doing so abused its discretion. We cannot agree.

The PSC was influenced to grant the petition for rehearing because it was not satisfied that sufficient notice had been given to several affected property owners. While general notice of a hearing had been given, some property owners were not aware that an additional route was to be considered. At the rehearing, the property owners who petitioned for a rehearing testified concerning the effect the route ordered by the PSC would have on them. Considerable additional evidence was produced at the rehearing. There was additional and more specific evidence regarding costs of the alternative routes for the line. Evidence was also produced regarding the problem of obtaining easements for the alternative routes. In addition to the new evidence received at the rehearing, the PSC considered and re-evaluated the evidence produced at the first hearing.

We believe that the PSC's final determination was based on relevant factors and was rational. We are not aware of any errors in law made by the PSC, and we will not substitute our judgment for that of the PSC. Petitioners have not met their burden to demonstrate that the action of the PSC was arbitrary, capricious or an abuse of discretion.

II

The Board conditioned Cheyenne Light's use of county rights-of-way by requiring that Cheyenne Light place its lines underground. In petitioners' second issue on appeal, they attempt to structure a conflict in the powers of the PSC and the Board.

■ The PSC's statutory authority is set out in W.S. 37–2–112 (1977): "The Commission shall have general and exclusive power to regulate and supervise every public utility within the state." This statute is plain and unambiguous on its face. Words used within statutes are to be given their plain and ordinary meaning. *Department of Revenue & Taxation of State of Wyoming v. Casper Legion Baseball Club, Inc.*, 767 P.2d 608, 610 (Wyo.1989). Section 37–2–112 grants the PSC general and exclusive regulatory powers.

■ The Board's order that the line be placed underground was apparently issued pursuant to W.S. 1–26–813 (1977) which provides that utilities must obtain permission from a county commission when putting their lines on county roads:

> Corporations authorized to do business in this state for the purpose of constructing, maintaining and operating a public

---

1.· W.S. 37–2–214 (1977) reads in pertinent part:
   At any time after an order has been made by the commission any person interested therein may apply for a rehearing in respect to any matter determined therein and the commission shall grant and hold such rehearing if in its judgment sufficient reason therefor be made to appear * * *.

utility may set their fixtures and facilities along, across or under any of the public roads, streets and waters of this state in such manner as not to inconvenience the public *in their use.* * * * A person or firm must first obtain permission from the state highway commission or the board of county commissioners in the county where the construction is contemplated before entering upon any state highway or county road for the purpose of commencing the construction. (Emphasis added.)

This statute does not, however, grant the Board the authority to regulate public utilities.

Petitioners contend that the PSC was "bound by the decision of the Laramie County Commissioners" and that the PSC exceeded its statutory jurisdiction and authority or was lacking statutory right to make the decision it did.

Petitioners have not given effect to the holding in *K N Energy, Inc. v. City of Casper,* 755 P.2d 207, 213 (Wyo.1988):

> State-wide regulation and supervision of public utilities is the subject of Title 37 of Wyoming Statutes 1977. "The public service commission of Wyoming," created by § 37–2–101, W.S.1977, has "general and exclusive power to regulate and supervise every public utility within the state in accordance with the provisions of this act." Section 37–2–112, W.S.1977. * * * The scope of the authority granted to the PSC demonstrates a legislative intent that the police power of the state, to the extent that it relates to public utilities, shall be exercised by the PSC and to preserve none of that power for municipalities.

That said in *K N Energy, Inc.* applies to counties. There is no significant distinction between the authority and powers the legislature granted and delegated to municipalities and that granted and delegated to counties.

> When referring to "municipalities" and "municipal corporations," these terms are often used in a manner which is intended to also include counties. For this reason, when * * * we contemplate

the law of a municipality's delegated authority, our observations can be interpreted as also including the powers delegated to a county.

*Schoeller v. Board of County Commissioners of County of Park,* 568 P.2d 869, 875 (Wyo.1977) (citations omitted). *Schoeller* also states that there are more limits on counties than those placed on municipalities:

> Exhaustive research has revealed no case in which a distinction was made between the powers of a county and the powers of a municipality in order to prove *greater* power in the county. This is to say, the powers of a county are usually more restricted than those of a municipal corporation * * *.

*Id.* at 875.

The problem of subjecting public utilities to different regulations is addressed in *County of Chester v. Philadelphia Electric Company,* 420 Pa. 422, 218 A.2d 331, 333 (1966), where the court stated:

> If each county were to pronounce its own regulation and control over electric wires, pipe lines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state. It is for that reason that the Legislature has vested in the Public Utility Commission exclusive authority over the complex and technical service and engineering questions arising in the location, construction and maintenance of all public utilities facilities.

*See also Commonwealth v. Delaware & Hudson Railway Co.,* 19 Pa.Cmwlth. 59, 339 A.2d 155 (1975). In *Niagara Mohawk Power Corporation v. City of Fulton,* 8 A.D.2d 523, 188 N.Y.S.2d 717, 721–22 (1959) (quoting *Consolidated Edison Company of New York v. Village of Briarcliff Manor,* 208 Misc. 295, 300, 144 N.Y.S.2d 379, 384 (1955)), the court stated:

> The power of the municipality to enact a zoning ordinance must yield to the superior force of the state statutes which impose upon the public utility company the duty of rendering safe and adequate service.

"The general grant of power to a municipality to adopt zoning laws in the interest of public welfare does not have the effect of permitting the local legislative body to override such state law and policy."

Applying *K N Energy, Inc.* and *Schoeller* to this case brings us to the conclusion that a county does not have the power to regulate public utilities. The statutory language of § 37-2-112, as well as the case law, makes it apparent the PSC has the exclusive responsibility of regulating public utilities.

### III

In the final issue, petitioners maintain that the action by the PSC was not supported by substantial evidence. An attack on the quantum of evidence is another way of alleging that the PSC's action was arbitrary and capricious.

In Parts I and II we delineated certain evidence in both the original hearing and the rehearing. In this portion of the opinion we will repeat some of that evidence and refer to additional evidence.

The Wyoming Administrative Procedure Act provides that it is the duty of the court reviewing an agency action to determine if the decision was supported by substantial evidence. W.S. 16-3-114 (1977).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it may be less than the weight of the evidence but cannot be contrary to the overwhelming weight of the evidence.

*Wyoming Insurance Department v. Avemco Insurance Company*, 726 P.2d 507, 509 (Wyo.1986). *See also Cody Gas Company v. Public Service Commission of Wyoming*, 748 P.2d 1144, 1146 (Wyo. 1988). If the whole record establishes that there is substantial evidence to support agency action, then the Supreme Court will not substitute its judgment for that of the agency.

■ Substantial evidence is such relevant evidence as reasonable minds would accept as adequate to support a conclusion. *Southwest Wyoming Rehabilitation Center v. Employment Security Commission of Wyoming*, 781 P.2d 918 (Wyo.1989); *Beddow v. Employment Security Commission of Wyoming*, 718 P.2d 12, 14 (Wyo.1986). In determining whether that quantum of evidence is present, all of the evidence on the record, both that which supports and that which conflicts with the agency's decision must be reviewed, and the court must determine whether the agency could reasonably conclude what it did. The standard requires more than a mere scintilla of evidence, more than a mere suspicion that a certain fact exists. However, once that measure of evidence has been found to exist, the possibility of drawing two inconsistent conclusions from a body of evidence does not prevent a finding that the conclusion drawn by the administrative agency was supported by substantial evidence. *Burlington Northern Railroad Company v. Public Service Commission of Wyoming*, 698 P.2d 1135, 1139 (Wyo.1985). The courts will defer to the experience and expertise of the agency in its weighing of the evidence and will disturb its decisions only where it is clearly contrary to the overwhelming weight of the evidence on the record. *Cody Gas Company*, 748 P.2d at 1146.

The PSC is to determine the weight to be given evidence in light of its experience and expertise. *In the Matter of Rule Radiophone Service, Inc.*, 621 P.2d 241, 245 (Wyo.1980). Further, the PSC must weigh potential advantages and disadvantages that may come with a proposal. *Id.* at 246.

■ After taking a considerable amount of evidence at the rehearing, the PSC determined that the originally approved route was circuitous, would require approximately one-half mile of additional and unnecessary overhead power line construction costs, would be unnecessarily obstructive along the two additional and unnecessary legs of the power line route, would require three additional metal corner structures and four additional treated wood pole structures which would be installed along and near existing homes and developed properties near Laughlin Road. Use of the direct route would result in reduced con-

struction and maintenance costs that will support lower rates to all of Cheyenne Light's ratepayers, and would in turn avoid the additional expense of clearing a new route through the base which may increase the construction costs.

The PSC was presented with evidence as to the cost of the different alternatives to the line, as well as the population demographics of the area. The cost differential, coupled with a desire to minimize impact on existing residences, was substantial evidence to support the PSC's conclusion.

In summary, we are satisfied that the PSC's action was not arbitrary or capricious. Furthermore, the PSC did not abuse its discretion nor exceed its jurisdiction. The decision of the PSC was supported by substantial evidence.

Affirmed.