In the Matter of the Workers' Compensation Claim of Michael J. KRAUSE, an Employee of United Nuclear Corporation.

Michael J. KRAUSE, Appellant (Employee–Claimant),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Objector–Defendant).

No. 90–91.

Supreme Court of Wyoming.

Dec. 13, 1990.

George Santini of Graves, Santini & Villemez, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen. and Larry M. Donovan, Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., THOMAS, CARDINE and MACY, JJ., and BROWN, J., Retired.

BROWN, Justice, Retired.

Appellant Michael J. Krause sustained an injury in September 1979 and received workers' compensation benefits until March 7, 1980. In February 1989, he filed a claim for benefits with respect to the 1979 injury. His claim was denied and he appealed. According to appellant, the single issue on appeal is:

> In determining questions of medical causation, may the uncontroverted testimony of the medical experts be disregarded by an administrative hearing officer?

Appellee Workers' Compensation Division states the issue to be:

> Is there substantial evidence to support the Administrative Hearing Officer's Order denying Workers' Compensation Benefits to Michael Krause.

We affirm.

On September 17, 1979, appellant injured his hand in an accident while working in an underground mine for United Nuclear Company. Following treatment of his hand, workers' compensation benefits were paid through March 7, 1980. No further claims for benefits were made until February 1989.

In 1982, appellant left the employment of United Nuclear and has since worked at a variety of jobs. While working in Arizona in 1987, he experienced problems with his right hand and wrist after using a hammer drill. These problems eventually became severe enough that he sought assistance through the Arizona Department of Vocational Rehabilitation and was referred to Dr. John W. Madden, a board-certified specialist in hand surgery. Dr. Madden diagnosed appellant's condition as an unstable scaphotrapezial trapezoidal joint in his wrist. Appellant subsequently filed a claim for benefits under the Workers' Compensation Act in February 1989. The claim was denied.

A contested-case hearing was held before an administrative hearing officer at which appellant testified by telephone and the deposition of Dr. Madden was introduced. In his deposition, Dr. Madden testified "that the probabilities" were that the trouble Mr. Krause was now having was a direct result of the injury he suffered in September 1979. Dr. Madden further testified that he had not been informed by appellant of any traumatic injuries suffered to his hand and wrist in the interim.

Appellant testified at the hearing that after leaving United Nuclear in 1982 he worked at a variety of jobs. He stated that he had used several different hand tools in this occupation, and it was during this time that he developed problems with his hand and wrist. He testified that, among other things, his hand started to ache for the first time in 1987 after he operated a hammer drill. The hearing officer denied the requested benefits, holding that appellant failed to prove compensability.

Appellant filed a petition for judicial review in the district court. On March 5, 1990, the district court issued a decision letter affirming the findings of the hearing officer. Appellant filed notice of appeal on March 23, 1990.

Appellant's theory is that in a single accident more than one compensable injury occurred. Specifically, he contends that in the September 1979 accident he sustained two broken bones in his right hand for which he received benefits. He also claims that in the same accident he suffered a separate and additional injury to the ligaments holding the joint in place which did not manifest itself for several years. He explains that, with continued use over several years, the bones of the joint became unstable resulting in the problems with his wrist for which he seeks compensation.

This court recently reaffirmed the concept that a single accident may give rise to more than one compensable injury. *Pacific Power & Light Company v. Rupe*, 741 P.2d 609 (Wyo.1987) and *State ex rel. Wyoming Worker's Compensation Division v. Malkowski*, 741 P.2d 604 (Wyo. 1987), citing *In the Matter of Barnes*, 587 P.2d 214 (1978) and *Baldwin v. Scullion*, 50 Wyo. 508, 62 P.2d 531 (Wyo.1936) as primary authority.

Appellant has the burden of proving that the February 1989 problem with his hand

was the result of the September 1979 accident. Appellant's principal witness with respect to the connection between the 1979 accident and the injury for which a claim was made in 1989 was Dr. John W. Madden. Reduced to its simplest terms, if the hearing officer properly rejected Dr. Madden's testimony, appellant did not sustain his burden to prove the causal connection between the 1979 accident and the claim in 1989. On the other hand, if the hearing officer improperly rejected the testimony of Dr. Madden, the causal connection may have been adequately proven.

Where the testimony of a disinterested witness is not directly contradicted but there are circumstances which controvert the testimony or explain it away, or if such testimony is clouded with uncertainty and improbability, or otherwise appears to be unreliable or unworthy of belief, the trier of fact is not bound to accept it. Justice does not require a court or jury to accept as an absolute verity any statement of a witness merely because it is not directly or specifically contradicted by other testimony, and there are many things which may properly be considered in determining the weight that should be given the direct testimony of a witness even though no adverse verbal testimony is adduced. If such testimony is evasive, equivocal, confused, or otherwise uncertain, it may be disregarded. If it is improbable, physically impossible, contrary to physical facts or to the laws of nature or scientific principles, or is opposed to common knowledge, inconsistent with other circumstances established in evidence, or contradictory within itself, it is without any value and may be disregarded.

30 Am.Jur.2d *Evidence* § 1083 (1967).

As with the testimony of an eyewitness to a decisive fact, if the members of the jury are satisfied of the trustworthiness of the opinion rendered by an expert on an ultimate fact or issue, the evidence may be conclusive of the issue, but they are not bound to accept the opinion or to render the verdict according to it. Every expert opinion rests on an assumption of fact; if the opinion is given in response to a hypothetical question, its weight depends wholly on the jury finding that the assumed facts have been proved; if it is based on the expert's own testimony as to the facts, the truth of this testimony is no less open to their belief or disbelief. In addition, the soundness of the opinion itself must be determined by the jury in consideration of its apparent reasonableness or their confidence in the skill and trustworthiness of the witness, and of any contradiction from other experts. However, the testimony by an expert as to the ultimate conclusion of fact must be his or her expert opinion; any other statement not so grounded is inadmissible as a conclusion.

31A Am.Jur.2d *Expert and Opinion Evidence* § 50 (1989).

In *Rice v. State*, 500 P.2d 675, 676 (Wyo.1972), this court held that "a jury can always disregard the testimony of an expert if the jurors find it to be unreasonable." We would expand the holding in *Rice* and hold that the opinion of an expert may be disregarded if the trier of fact finds it to be unreasonable or not adequately supported by facts upon which the opinion is based.

With respect to appellant's February 1989 claim, Dr. Madden testified:

Based on the information I have from his history and physical examination, I would have to say that the probabilities are that the trouble he demonstrates now is a direct result of the injury he suffered in September of 1979.

In paragraph 18 of the hearing officer's findings of fact he stated:

The inconsistencies between the history of work, accidents, and pain and discomfort given by Employee/Claimant and those as related by Dr. Madden convinced the hearing officer that the opinions given by Dr. Madden as to the causation of Employee/Claimant's current wrist problems are speculative and based on a very questionable history.

The internal inconsistencies in Dr. Madden's and appellant's testimony and

the inconsistencies between the two testimonies are neither minor nor insignificant. When appellant related the medical history of his wrist injury to Dr. Madden, he explained that it was known to him within two months after the broken bones had healed; this would have been in late 1979 or early 1980. At trial, however, appellant testified he became aware of the injury to his wrist in about 1987.[1] Following are excerpts from deposition and trial testimony.

In his deposition, Dr. Madden related what appellant had told him regarding when the problems with his wrist were noticed.

He was placed in a cast for an appreciable period of time. He gradually got back his fingers so that they functioned adequately for him, and went on about his business.

He noticed almost immediately some mild discomfort in his wrist but didn't think too much about it * * *.

The discomfort in his hand was different than the discomfort from the metacarpal fractures that he had gotten over. The odd residual of this injury to him was the fact that when he made a power grip—that is, held something like a hammer, a hand tool, a suitcase—that he had discomfort in the mid-portion of his wrist, and that this discomfort was getting steadily worse.

&ast; &ast; &ast; &ast; &ast; &ast;

What he told me was that after his metacarpal discomfort had receded to a point where he wasn't thinking about it, he was left with this terrible discomfort in his wrist which got worse and worse and worse; but he states, at this point, that he had this trouble with his wrist ever since he recovered from the metacarpal fractures.

At trial, appellant's testimony was different from what Dr. Madden said he was told.

Q. Okay. Why don't you tell me, if you can, when the discomfort from the hand arose, when it ceased and the same with the wrist?

A. Okay. Now, the hand—the hand, itself, ceased shortly after the cast. Now, we're talking—that was only the pain from the bone, you know, and that I'm giving you a guess on as far as where exactly the pain was, but the bone was broke. The wrist itself was not really giving me trouble then. And it never was something that came up. * * * I'd have to say possibly a month to two months after my hand was out of the cast that I didn't notice anything.

Q. At what point then, you know, two months now have elapsed since the cast is off and you're not having any hand troubles, when do the hand troubles resurface?

A. Approximately two years ago from today. And then they started just to get progressively worse. * * *

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Oh, that's fine, Mr. Krause. Then when—can you tell me when the pain and discomfort in the wrist then either—I don't want to say resurfaces because I understand you to say that you didn't have it initially but when did the pain and the swelling and discomfort in the wrist then come about?

A. That's been about two years ago. And it started like I talked about earlier when we started to use the drills to put in the little runners underneath the doors and I noticed that that was the first time that it was really noticeable.

In deposition testimony, Dr. Madden testified that "the symptoms of carpal abnormalities aren't as readily apparent as symptoms of broken bones. You don't feel them right away." He further testified that he did not take a detailed history of appellant for the period between the 1979 injury and the present:

---

1. In its brief, appellee contends that appellant's claim was barred by the statute of limitations. W.S. 27–364 (1977) (in effect at the time of the injury) may be applicable if appellant was attempting to re-open his 1979 case. W.S. 27–12–503 (1977) may have application according to appellant's theory of recovery (in a single accident, more than one compensable injury occurred). The hearing officer did not decide the case on the statute of limitations, however.

Q. Okay. Can you tell me, Doctor, did you take any type of a work history from Mr. Krause—what he had been doing in the nature of employment since the mining accident?

A. If I did take a history, it was not a detailed one, and I have no records of it, Mr. Donovan; so that would not be helpful.

Dr. Madden then testified that he did not know what caused the osteoarthritis in appellant's wrist:

Q. Have you seen these types of changes, or the same conditions that Mr. Krause has in relation to the osteoarthritic problem, in people who have not had the broken fingers like Mr. Krause has had?

A. To a degree, yes, surely.

Q. Can you tell us, Doctor, what part the hard work that Mr. Krause has done since the injury plays in his—or has played—in his osteoarthritic problem?

A. No, I can't. As I said, I have not been following Mr. Krause around for ten years. I don't know other than what I have here. I don't know what caused the problem or anything else. All I have is what he's told me; and in reviewing the magnitude of the injury and what he has described, my best guess is what I told you. I don't know any more than what I've said.

In his testimony, appellant was able to state specifically the event which caused his wrist and hand to suddenly start bothering him. He stated:

Q. What sort of problems did you have with your hand in late 1987?

A. And I—the hand started, when I operated drills and I was—the first time I really started noticing it was when I was doing a lot of drilling.

Dr. Madden never spoke to Dr. Kaplan, appellant's doctor in 1979, nor did he review Dr. Kaplan's medical records with respect to appellant's September 1979 injury.[2]

Because of the inconsistencies in the testimony and deficient medical and work history with respect to appellant, the hearing officer did not abuse his discretion in rejecting Dr. Madden's testimony and opinion. Without the testimony and opinion of Dr. Madden, the hearing officer was justified in determining that appellant had not sustained his burden of proof and that the claim for workers' compensation benefits was properly denied.

Affirmed.

URBIGKIT, Chief Justice, dissenting.

In contesting the benefit award in this case, the Wyoming Workers' Compensation Division elected to proceed to hearing on a strategy based on cross-examination of contestant's witnesses. Not done was the acquisition of factual education by requiring the claimant to submit to an "independent" physical examination by a department designated doctor.[1]

The state's fund contest did not consist of affirmative evidence when only supported by cross-examination attack on the claimant's evidence which, in itself, still provided no evidence. *Oukrop v. Wasserburger*, 755 P.2d 233 (Wyo.1988). The claimant's case may have been weakened by what courts have on occasion characterized as insufficient or incidental inconsistency, but this did not change the stature of substantial affirmative evidence which was undisputed by responsive testimony. *In re Use Tax Assessment No. 32950*, 491 P.2d 1232 (Wyo.1971). See the discussion of inconsistency to imply opposition, antagonism or repugnancy in *Swan v. United States*, 3 Wyo. 151, 9 P. 931 (1886); *State*

2. On April 6, 1989, appellant's attorney wrote to Dr. Kaplan and, among other things, requested appellant's medical records. Apparently Dr. Kaplan did not respond to the letter.

1. The qualification and the expertise of the specialist whose testimony was used to support compensability of the claim were unquestioned. Dr. John Madden, by certification, was clearly a national expert including diplomate—American

Board of Surgery, diplomate; American Board of Plastic Surgery, diplomate; and American Board of Surgery, certified in hand surgery. Licensed to practice medicine in three states, he had served as a professor at four medical colleges and served as a visiting professor in over twenty United States and foreign medical schools.

*v. Dean,* 129 N.H. 744, 533 A.2d 333 (1987); and *Ward v. State,* 95 Nev. 431, 596 P.2d 219 (1979).

Within the character of this decision which was initially an administrative agency adjudication, I would reverse because claimant presented substantial evidence and the state's fund none. *Hohnholt v. Basin Elec. Power Co-op,* 784 P.2d 233 (Wyo.1989). Few, indeed, are the wizards of the law who can, by mastery of cross-examination, win factually determinable cases without evidence. Fewer by far are those who can, unless a preclusive rule of law does exist, succeed in administrative agency proceedings since the claimant will almost always testify and provide significant evidence. *See In re Use Tax Assessment No. 32950,* 491 P.2d 1232 and cases cited therein, including *Dickinson v. United States,* 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953) and *N.L.R.B. v. Walton Mfg. Co.,* 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962). This was a factual case. Appellant ran the race and appellee chose not to leave the starting gate. I would not critique or demean the slow speed, if that were the case of appellant, to award victory to the non-runner.

Both the worker and his medical witness provided evidence supporting the award. *See In re Use Tax Assessment No. 32950,* 491 P.2d at 1234. Since the state fund supplied no contesting evidence, I would reject the hearing examiner's conclusion which effectively disregarded the totality of the entire record. His factual conclusions were "[u]nsupported by substantial evidence." W.S. 16–3–114(c)(ii)(E). *See Ludlow v. Wortham Machinery Co.,* 71 Wyo. 331, 257 P.2d 358 (1953). The suspicion which we addressed in *Vandehei Developers v. Public Service Com'n of Wyoming,* 790 P.2d 1282 (Wyo.1990) and *Edwards v. Harris,* 397 P.2d 87 (Wyo.1964), at worst, prevails here. This was not a case providing conflicting expert medical testimony. *See Bocek v. City of Sheridan,* 432 P.2d 893 (Wyo.1967). Rather, the evidentiary posture of the case would fit within the principle announced in *Chesapeake & O. Ry. Co. v. Martin,* 283 U.S. 209, 216, 51 S.Ct. 453, 456, 75 L.Ed. 983 (1931), that,

although credibility may be for the fact finder, "this does not mean that the [fact finder] is at liberty, under the guise of passing upon the credibility of a witness, to disregard his testimony, when from no reasonable point of view is it open to doubt." The testimony of neither Dr. Madden nor claimant, Michael J. Krause, was contested or factually disproved except by advocate argument and inclusive cross-examination directed to create inconsistencies.

Lacking significant, substantial or any evidence to sustain the objection to claim payment, I would find the claimant to have won the race because he did run, and reverse the finding which is unsupported by evidence within the hearing record. *In re Use Tax Assessment No. 32950,* 491 P.2d 1232.