**UTAH POWER & LIGHT COMPANY, Petitioner,**

v.

**The PUBLIC SERVICE COMMISSION OF WYOMING, Respondent.**

**No. 85–115.**

Supreme Court of Wyoming.

Jan. 28, 1986.

H.L. Harris, of Harris & Harris, Evanston, Bruce Asay, of Kline & Buck, Cheyenne, and Thomas W. Forsgren, Edward A. Hunter, Jr., and Rosemary Richardson, Salt Lake City, Utah, for petitioner.

Steven R. Shanahan, Sr. Asst. Atty. Gen., Cheyenne, for respondent.

* Retired November 30, 1985.

Marilyn S. Kite and Donald I. Schultz, of Holland & Hart, Cheyenne, Michael D. Jones, Harlan S. Martens, and William J. Stack, Midland, Tex., for Exxon Co., U.S.A., in support of respondent.

Houston G. Williams, of Williams, Porter, Day & Neville, P.C., Casper; and Hugh Smith, James F. Fell, and Stephen H. Burger, Portland, Or., for Pacific Power & Light Co., in support of respondent.

Before THOMAS, C.J., ROONEY,* BROWN and CARDINE, JJ., and RAPER, J., Retired.

ROONEY, Justice.

Petitioner petitioned the district court for review of an agency action by respondent Public Service Commission of Wyoming (commission). The district court concluded that the matter was appropriate for determination by this Court and certified it to this Court for such determination pursuant to Rule 12.09, W.R.A.P., 1985 Cum.Supp. Petitioner contends that the commission improperly authorized Pacific Power & Light Company (PP&L) to furnish electrical power to the entire Shute Creek gas processing plant of Exxon Company, U.S.A. (Exxon). The plant is located on the boundary of Sweetwater and Lincoln Counties and requires electrical service in both counties. Petitioner holds a certificate of public convenience and necessity to provide service in Lincoln County, and PP&L holds such to provide service in Sweetwater County.

We affirm the agency action.

The Shute Creek gas processing plant was being constructed to process gas from Exxon's LaBarge gas field in Sublette, Lincoln and Sweetwater Counties. It is composed of three gas processing trains and a carbon dioxide compression station. Two of the gas processing trains were to be located on the Lincoln County side of the plant. The other gas processing train and the compressor station were to be located on the Sweetwater County side of the plant. The gas processing trains require a

power load of 35 megawatts each, and the compressor station requires a power load of 45 megawatts. Thus, the power load for that in Lincoln County is 70 megawatts, and for that in Sweetwater County it is 80 megawatts. The service requirement for the entire load is at a transmission voltage of 230 kV. PP&L's closest 230-kV source is its Granger line 12.8 miles from the site. Petitioner's closest kV source is at its Naughton generating plant 30.5 miles from the site.

PP&L's request for a certificate of public convenience and necessity is to construct a single radial 12.8-mile 230-kV transmission line to provide the entire 150-megawatt load requirement of the plant. Petitioner opposed the request of PP&L and requested a certificate of public convenience and necessity for itself to construct a 30.5-mile 230-kV transmission line to provide 70 megawatts for the two gas processing trains in Lincoln County. The commission granted PP&L's request and denied that of petitioner.

Subsequently, petitioner unsuccessfully attempted to obtain a rehearing of the matter on the basis of alleged newly discovered evidence that Exxon was planning to expand the processing facility.

Petitioner words the issues on appeal as:

## "ISSUE I

"Did the Public Service Commission of Wyoming err in ordering that the public convenience and necessity requires that electric service be provided by Pacific Power & Light Company in the certificated territory of Utah Power & Light Company.

## "ISSUE II

"Did the Public Service Commission of Wyoming abuse its discretion and err in refusing to allow the administrative record to be reopened in order to supplement it with newly-discovered evidence."

## ISSUE I

■ Petitioner emphasizes that it is willing and able to serve Exxon's demand for electrical power to the facilities in Lincoln County, petitioner's certificated area. It points to language by the commission in connection with previous matters which recognizes the impropriety of invasion of a certificated area of one utility by another utility, but it refuses to accept the commission's determination that the conditions in this case are unique. At page 40 of its findings, opinion and order, the commission recites:

"This Commission does not by this decision condone the raiding or invasion of another utility's certificated territory. * * * Pacific Power * * * would not have been allowed to serve the Shute Creek Plant if the public interest had not demanded that result. *The Commission considers this case as unique and it would be a mistake for any public utility to attempt to use this decision as a stepping stone for the invasion of another's certificated area.*" (Emphasis in original.)

Pertinent to this case are the following statutory powers given to the commission:

"No public utility shall begin construction of a line, plant or system, or of any extension of a line, plant or system without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction. This act shall not be construed to require any public utility to secure a certificate for an extension within any city or town within which it has lawfully commenced operation, or for an extension into territory contiguous to its line, plant or system for which no certificate is in force and is not served by a public utility of like character or for any extension within or to territory already served by it, necessary in the ordinary course of its business. If any public utility, in constructing or extending its line, plant or system interferes or is about to interfere with the operation of the line, plant or system

of any other public utility already authorized or constructed, the commission on complaint of the public utility claiming to be injuriously affected, *may after hearing make such order and prescribe the terms and conditions for the location of the lines, plants or systems affected, as to it are just and reasonable.* * * *" (Emphasis added.) Section 37–2–205(a), W.S.1977.

The commission has, thus, been given the power to accomplish the reason for the existence of certificates of public convenience and necessity. The purpose for such must be kept in mind in making a determination relative to incidents pertinent to, and the activities allowed by, certificates of public convenience and necessity. Such purposes are concisely set forth at 73B C.J.S. Public Utilities § 69(c) (1983):

"The purposes of requiring a certificate of convenience and necessity are to protect the public from speculation and duplication of facilities, and from inadequate service and higher rates which frequently result from such duplication, and to protect utilities from competition. * * *

"Whether there should be competition * * *, and to what extent, is largely a matter of policy [for] the commission. * * * "

The facts upon which the commission based the decision in this case reflect that, by allowing PP&L to serve that part of the plant in the area which had been certificated to petitioner, the purpose, i.e., to "protect the public from * * * duplication of facilities," to "protect the public from * * * inadequate service," and to "protect the public from * * * higher rates," was accomplished. To have ruled in favor of petitioner, just the opposite would have occurred—and the purpose for certificates of public convenience and necessity in the specific territory would have been nullified.

The commission found, and there was substantial evidence therefor, that service to the plant as proposed by PP&L through one 12.8-mile 230-kV line to provide the entire required 150 megawatts was more economical and less wasteful than such service by a 30.5-mile 230-kV line to provide 70 megawatts for only part of the plant as proposed by petitioner; that duplication of electrical facilities would thus be avoided; that costly major changes in plant design required for service from two sources would be avoided; that PP&L rates provide a significant cost advantage to Exxon; that PP&L can provide high speed reclosure when electrical faults occur, while petitioner's ability to do so is in doubt; that such high speed reclosure is necessary to prevent plant shutdown due to the large synchronous motors tripping off with resulting expense, loss of revenue, and flaring of unprocessed gas; and that a larger body of Wyoming ratepayers would benefit from service by PP&L since the rates for PP&L's approximately 101,100 Wyoming retail customers (plus seven Wyoming resale customers serving approximately 47,600 customers) will be lowered about 4.9 percent, whereas that for petitioner's approximately 11,600 Wyoming customers would be lowered from .6 percent to 1.59 percent. The commission recognized the beneficial import of Exxon's LaBarge project on Wyoming and the importance of assisting its operation. The project is expected to create temporary and permanent employment for many people, to add to secondary recovery of oil resources through sales of processed carbon dioxide, and to add to the state's tax base and provide a source of mineral royalty and tax revenue.

Section 37–2–205(a) empowers the commission to act in matters such as this. The specific authorization is:

" * * * If any public utility, in constructing or extending its line, plant or system interferes or is about to interfere with the operation of the line, plant or system of any other public utility already authorized or constructed, the commission on complaint of the public utility claiming to be injuriously affected, may after hearing make such order and prescribe the terms and conditions for the location of

the lines, plants or systems affected, as to it are just and reasonable. * * * "

We are not here setting forth any new concept.

We have said before that the commission has continuing jurisdiction over utilities and has the power to amend certificates of public convenience and necessity. *Williams v. Public Service Commission of Wyoming*, Wyo., 626 P.2d 564, cert. denied 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *Tri-County Electric Association, Inc. v. City of Gillette*, Wyo., 584 P.2d 995 (1978); *Big Horn Rural Electric Company v. Pacific Power & Light Company*, Wyo., 397 P.2d 455 (1964). We have also said that the commission's responsibility of regulating utilities in the public interest is a continuing one, and it is "unwise and impractical" to assume that the commission intends to grant a permanent and exclusive franchise for an indefinite future without reflection on changing conditions. *Tri-County Electric Association, Inc. v. City of Gillette*, supra at 1006.

In *Telstar Communications, Inc. v. Rule Radiophone Service, Inc.*, Wyo., 621 P.2d 241 (1980), we recognized that § 37-2-205(a) does not contemplate that only one utility will be granted a certificate of public convenience and necessity within a certificated area, and we recognized that the section anticipates that more than one system can co-exist in one area, with paramount consideration being the public interest, and the desires of the utility being secondary. At page 246, we said:

"* * * The fact that a new service may have some effect on an existing service does not preclude the creation of additional facilities. Incidental disadvantages are simply weighed in balance against ultimate public advantages. *Hohorst v. Greenville Bus Company*, 1954, 17 N.J. 131, 110 A.2d 122."

The commission did not err, under the circumstances of this case, in determining that public convenience and necessity would be best served by authorizing PP&L to serve the entire plant located on the boundary of the certificated area of PP&L and petitioner.

## ISSUE II

Section 37-2-214, W.S.1977, provides in pertinent part:

"* * * [T]he commission shall grant and hold such rehearing if *in its judgment sufficient reason therefor be made to appear * * *.*" (Emphasis added.)

The newly discovered evidence upon which petitioner contended for a rehearing consisted of newspaper clippings relating to a *possible* expansion of the plant to require as much as 300 megawatts. Any expansion is speculative at this time. The application for the industrial siting permit and the affidavit of an Exxon official reflect that any expansion would depend on market conditions, and that there was no present plan for such. Petitioner did not carry the burden of establishing a present intent to expand the plant. If such expansion should occur, requiring additional lines for electrical service, the commission would then hear petitioner's position relative thereto.

■ A rehearing requires a "judgment" by the commission that there is "sufficient reason therefor." A rehearing is in the discretion of the agency and will be interfered with only for a clear abuse of such discretion. *United States v. Pierce Auto Freight Lines*, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); *Interstate Commerce Commission v. Parker*, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945).

■ "Abuse of discretion" as defined for court action is applicable to agency action:

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * * " *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

 As so defined, an abuse of discretion did not here occur in the refusal by the commission to rehear this matter.

Affirmed.