The LOUISIANA LAND AND
EXPLORATION COMPANY,
Petitioner (Plaintiff),

v.

The WYOMING OIL AND GAS CONSERVATION COMMISSION,
Respondent (Defendant),

and

Woods Petroleum Corporation,
Respondent (Intervenor).

No. 90–82.

Supreme Court of Wyoming.

April 18, 1991.

S. Thomas Throne, Sheridan, for petitioner.

Joseph B. Meyer, Atty. Gen., Joe Scott, Senior Asst. Atty. Gen., Casper, for respondent Wyoming Oil and Gas Conservation Com'n.

Craig Newman of Brown & Drew, Casper, for respondent Woods Petroleum Corp.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

This appeal provides a geographical and geologically related conflict to the oil and gas well production controversy considered in *ANR Production Co. v. Wyoming Oil and Gas Conservation Com'n,* 800 P.2d 492 (Wyo.1990). We are presented with, following a June 1989 hearing, a Wyoming Oil and Gas Conservation Commission (Commission) shut down order for a producing oil and gas well drilled by petitioner, Louisiana Land and Exploration Company (LL & E), to the Second Bench of the First Frontier Formation in the Powell Unit. The basic issue pursued on appeal is the Commission's procedure in denial of a motion for rehearing based on newly discovered evidence or, alternatively, this court's authority to remand for additional evidence to be produced to provide a supplemental record.

We remand for additional hearing.

As this court discussed in the parallel case of *ANR Production Co.,* this litigation results from the 1983 establishment of the Powell Pressure Maintenance Unit (PPMU) which produced from the First Bench; while in that case, ANR Production Co. and, in this case, LL & E, produced wells from the Second Bench. This well, Devex 32–11, was drilled in the summer of 1984 in the border area surrounding the PPMU. At the drill site, the First Bench of the First Frontier Formation utilized in the pressure maintenance unit was not present in producing capacity and the well was developed into the productive Second Bench sand which is geologically located approximately fifty feet lower in the formation.

The Devex 32–11 well was productive from 1984 until the summer of 1988 when unusual production characteristics were noted. Woods Petroleum Corporation, as a PPMU unit operator, was notified. Hearings were then also underway for the well

discussed in the *ANR Production Co.* case. On May 18, 1989, Woods Petroleum filed its application to shut down the Devex 32–11 well pursuant to allegations that the Devex 32–11 well was in communication with the oil production sand being pressurized into secondary recovery through the PPMU. The application was served on LL & E on May 30, 1989 and a hearing was held less than two weeks later on June 13, 1989. The Commission, immediately after the hearing, entered an interim order shutting down the Devex 32–11 well.

It is what happened immediately after the June 13 hearing that presents the issues of this appeal in contention of procedural abuse of discretion when the Commission denied an opportunity for a rehearing to the well owner based on newly discovered evidence and the record supplementation request addressed to and unanswered by the district court before certification by-pass to this court.[1]

■ We determine this case on a narrow basis in remanding to the Commission for a further hearing to permit LL & E to present its evidence which relates to the claimed invalidity of the expert witness computer simulator model produced by Woods Petroleum for the Commission hearing.

LL & E advances its contention regarding the controversy in briefing:

> At the June 13, 1989 hearing, Woods surprised Petitioner/LL & E by presenting technical evidence through expert testimony (apparently developed long before Petitioner/LL & E was notified of the hearing) that the fracture treatment of the Devex 32–11 allegedly created communication between the First Bench Reservoir and the Second Bench in the vicinity of the Devex 32–11 well bore * * *. In order to overcome the factual absence of the First Bench reservoir in

---

1. Ancillary to this litigation is the use that Woods Petroleum made of the Commission decision in filing a suit in Oklahoma alleging collateral estoppel in order to obtain a large recovery for claimed production that LL & E had obtained through its Second Bench well by communication with the First Bench. LL & E claims that, by request from Woods Petroleum,

the initial interim order was amended without hearing additional evidence and adding an unnecessary finding of fact which then constituted a basis for the claimed collateral estoppel of factual issues regarding source of oil obtained in production of the Devex 32–11 well. Those contentions will not be addressed by this decision.

the well bore of the Devex 32–11, Woods' expert witness hypothesized the existence of the First Bench reservoir of the First Frontier to be within twenty-two feet of the Devex 32–11 well bore. This conclusion was reached by use of a computer simulation model by Dr. Holditch * * *. Because of the high permeability of the First Bench reservoir in the PPMU, Woods expert, Dr. Holditch, indicated he could only obtain a history match with available data, using his computer simulation, by hypothesizing the existence of the First Bench within twenty-two feet of the Devex 32–11 well bore * * *. To reach his conclusion, Dr. Holditch used all of the data points obtained in a 1984 transient test of the Devex 32–11 as well as the base reading from a 1984 flow test on the Devex 32–11 * * *.

Immediately after the conclusion of the June 13 hearing, LL & E undertook a study of the hearing evidence and now contends that a portion of the pressure transient test used in the study was faulty and the input data used for simulation was wrong, producing erroneous computer output. Upon discovery of the alleged error, LL & E immediately filed an application for rehearing with the Commission to secure an opportunity to present newly discovered and additional evidence relating to contention of faulty data in the computer simulation. Essentially, the claimed error is alleged to relate to mechanical mistakes in process and failure to recognize in simulation the drilling mud characteristics used when the original well had been drilled.

In October, a hearing was held to consider the application for rehearing and the Commission, by application denial, refused to allow any evidence or testimony regarding the newly discovered evidence. LL & E took its adverse ruling on the motion for rehearing to the district court by a petition for review and the proceeding was then certified to this court pursuant to W.R.A.P. 12.09, without further evidence being presented. *See ANR Production Co.,* 800 P.2d 492. *Cf. Natrona County School Dist. No. 1 v. McKnight,* 764 P.2d 1039, 1047 n. 7 (Wyo.1988).

LL & E contends in basic argument that the Commission was arbitrary and in abuse of discretion in denial of the motion for rehearing since the time from initial notice for hearing through hearing date of less than a month and without notice of the proposed simulation report afforded no realistic opportunity for preparation and defense. It is argued that upon discovery of the contended error in the submission, a further hearing should have been afforded in order to provide a bilateral opportunity to present evidence on computer simulation model testimony to the Commission. Conversely, Woods Petroleum contends that LL & E was an actual participant in the *ANR Production Co.* proceeding and should have been informed and prepared as a result of the knowledge gained in that earlier course of Commission hearings so that a rehearing on the present case is unnecessary to provide a fair opportunity to defend.

Some development of these matters is necessary and advisable in Woods' view to correct the otherwise misleading impression one might gain upon reading the Brief of LL & E that the instant controversy developed all of a sudden and out of nowhere with the Application by Woods of May 18, 1989, and the hearing before the Commission on June 13, 1989, and further to rebut certain purely factual arguments by LL & E that it was surprised by a computer simulation and expert evidence introduced by Woods at the June 13, 1989, hearing before the Commission.

The transcript of proceedings in Docket No. 48–89, already before this Court in Case Nos. 89–276 and 89–277 [*ANR Production Co.,* 800 P.2d 492], reveals that procedurally the Devex Well, though not the focus of the March, 1989, Commission proceeding, was the subject of considerable evidence and testimony at the March, 1989, hearing of the Commission concerning another well which is before this Court in Case Nos. 89–276 and 89–277. Further, the transcript of the March, 1989, proceeding before the Commission will reveal that LL & E not only appeared through counsel and witnesses,

but further that LL & E participated fully in the March, 1989, proceeding and examined not only its own witnesses but the witnesses of the other parties involved in that hearing.

Accordingly, Woods believes that the Statement of the Case of both LL & E and the Commission needs to be supplemented so that the Court is aware that the Commission became aware of the Devex Well and the alleged problems concerning that well as early as March of 1989, some three months before the hearing in Docket No. 166–89, before the Court in the instant matter, and further that the Appellant in this cause participated fully in that earlier proceeding.

The generic factual situation which permeates these cases, and this one in particular, is the consideration that communication between the two benches for augmenting production in the Devex 32–11 well may develop in two separate ways. In the first instance, the Devex 32–11 well and its production methods may have opened up communication into the First Bench in the immediate vicinity of the well site. In the second instance, the activities of ANR Production Co. or any other wells in the entire area that may have been drilled into the Second Bench opened up communication so broadly between the two benches that the Devex 32–11 well became the beneficiary of the gas pressurization which was leaking at other well sites as communication between the two benches.

The procedural problem is that nothing indicates that the Commission took judicial notice of information obtained in the *ANR Production Co.* hearings in order to render the decision in this case. *Cockreham v. Wyoming Production Credit Ass'n,* 743 P.2d 869 (Wyo.1987). *Cf. Texas West Oil and Gas Corp. v. First Interstate Bank of Casper,* 743 P.2d 857 (1987), *reconfirmed* 749 P.2d 278 (Wyo.1988). Application of judicial notice for the purpose of the later related hearing requires written notice of what matters are considered as judicially noticed with notice to be sea-

sonably furnished to the litigants before hearing application and thereafter an appropriate record of any notice to evidence would be included in this record for appellate review. *Wyoming Bancorporation v. Bonham,* 527 P.2d 432 (Wyo.1974); *Chicago, Burlington & Quincy R. Co. v. Bruch,* 400 P.2d 494 (Wyo.1965); Bloomenthal, *Administrative Law in Wyoming—An Introduction and Preliminary Report,* 16 Wyo.L.J. 191, 206 (1962). Judicial review is confined to the administrative record. *State, Dept. of Motor Vehicles and Public Safety v. Pida,* 106 Nev. 897, 803 P.2d 227 (1990). *See also Exxon Corp. v. Wyoming State Bd. of Equalization,* 783 P.2d 685 (Wyo.1989), *cert. denied* — U.S. ——, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990), when by-pass certification to this court occurs. Since the cases are not consolidated, we are confined in analysis of the stated issue to this record, *Wyoming Hospital Ass'n v. Harris,* 527 F.Supp. 551 (D.Wyo.1981), *aff'd* 727 F.2d 936 (10th Cir.1984), and the specific documentation presented which is inclusion of the simulator testimony as clearly a significant contributor to the Commission's technical decision. We will not judicially notice what was not included in this record by Commission action as the factual basis for their decision.

This court is familiar with the efficient and expeditious processes used by the Commission as appropriate, if not indispensable, to the proper performance of the administrative agency activities. *Majority of Working Interest Owners in Buck Draw Field Area v. Wyoming Oil and Gas Conservation Com'n,* 721 P.2d 1070 (Wyo. 1986). Under the scheduling processes in this case with time from notice to hearing of less than a month, either the contestant is entitled to a reasonable opportunity for discovery and defense or, if actually surprised by the testimony provided at the scheduled hearing, to be granted the right to an extension of the hearing, *id.,* or a rehearing in order to have received a realistic opportunity to competently litigate its contention. *Utah Power & Light Co. v. Public Service Com'n of Wyoming,* 713

P.2d 240 (Wyo.1986).[2] Within the record presented, we cannot assess insignificance or lack of substantiality to the requested introduction of evidence attacking the validity of one principal part of the evidence of decision.

In specific position taken by the litigants, LL & E argues for a procedural disaffirmance in its inability to present an adequate defense, while Woods Petroleum contends that sufficient evidence under the rules applicable to administrative agencies requires affirmance. The difficulty that is left for this court is to assess technically the evidentiary contribution made by the computer simulation study of Dr. Stephen Holditch to determine factually whether (a) LL & E should have guessed at its existence, and (b) whether it was sufficiently significant in effect, even if invalid, to create a due process problem in hearing procedure.[3]

■ LL & E advances the argument that the Commission was required to have an evidentiary hearing in order to determine whether a rehearing should be granted. We do not accept that position which would effectively delineate two rehearings, one with evidence to determine if it should be held and the second then to determine what was found. In analysis, whether the action of the Commission in denying the opportunity for rehearing and the submission of additional evidence was an abuse of discretion, *Utah Power & Light Co.,* 713 P.2d 240, present consideration of the administrative rule, W.R.A.P. 12.08, is to be compared with W.R.C.P. 59(a) and 60(b) and W.R.Cr.P. 34. *Matter of Swasso,* 751 P.2d 887 (Wyo.1988). What we do conclude is that in an administrative hearing of this type, where provisions for rehearing are provided in administrative rules and regulations, normal rules which apply in the courts for a new trial under W.R.C.P. 59(a) and 60(b) should also apply, invoking requirements of newly discovered evidence,

including materiality, and that the evidence could not, with reasonable diligence, have been discovered and produced at hearing.

W.R.A.P. 12.08, Presentation of Evidence, provides:

If, before the date set for hearing [by the court on review petition], application is made to the court for leave to present additional evidence, and *it is shown to the satisfaction of the court that the additional evidence is material, and there was good reason for failure to present it in the proceeding before the agency, the court in contested cases shall order that the additional evidence be taken before the agency* upon conditions determined by the court. The agency may adhere to or modify its findings and decision after receiving such additional evidence, and shall supplement the record to reflect the proceedings had and the decision made. Supplemental evidence may be taken by the court in cases involving fraud or involving misconduct of some person engaged in the administration of the law affecting the decision. In all cases other than contested cases additional material evidence may be presented to the court.

(Emphasis added.) LL & E argues:

As can be seen, Rule 12.08 W.R.A.P. and Rule 60(b) W.R.C.P. both allow newly discovered evidence to be received and reviewed by an appellate court if the proper criteria are met. The common denominator between the two rules is that new evidence will be allowed at a subsequent hearing as long as there is a good reason why the evidence was not presented at the original hearing. The distinguishing factor between the two rules, though, is that Rule 12.08 requires a lower standard to be met by the party wishing to show new evidence; 12.08 requires a showing that the additional evidence is material and that the presenting

---

**2.** *Buck Draw Field Area,* 721 P.2d at 1078, although considering post-hearing supplementation of the record, has relevance when we said "a party is entitled to at least one response to any new evidence submitted."

**3.** The transcript of evidence produced at the hearing of about six hours totals 184 pages; of that total, Dr. Holditch was the witness for sixty-seven pages in applicant's case and ten pages in rebuttal within the applicant Woods Petroleum's total case of 113 pages of transcript.

party has a good reason for not presenting the evidence at the previous hearing, while Rule 60(b) requires that the new evidence be of the type that by due diligence could not have been discovered in time to move for a new trial.[4]

The factual structure of this case in relation to the procedural issues presented deserves clear identification. In considering shut down of the Devex 32–11 well, the Commission faced a factual decision to justify a proposed administrative action:

> Was the communication between bench one and bench two oil sands so that the secondary recovery gas pressurizing efforts of the PPMU were escaping into the second sand for production enhancement of non-unit wells?

The evidence of the hearing addressed the two issues of contended communication: (a) was the Devex 32–11 well itself the source of the gas sand escape, or (b) were wells at other field locations permitting the significant pressure enhancement benefit claimed to have developed for the Devex 32–11 well.[5] The significance of the difference and why communication existed is procedurally presented by the sequence of hearings held regarding separate wells in the field. The *ANR Production Co.* proceedings went first and followed earlier also into this court. Many of the same oil and gas geological formation basic contentions were addressed in each hearing. Although not a contestant party, LL & E was apparently present at the *ANR Production Co.* administrative agency proceedings. The record of the *ANR Production Co.* administrative hearing was not, however, in any way judicially noticed for later inclusion in the LL & E hearing of 1989. Consequently, we are confined to the actual record *in this case* for whatever the Commission overtly or subconsciously may have

done in analysis decision. Computer simulation testimony and opinion was present in *ANR Production Co.*, but it did not relate to the Devex 32–11 well and the computer simulation testimony for other wells is not now available for resolution in this case where introduced in the *ANR Production Co.* proceedings.

It is the persuasion of this court that either a litigant, such as LL & E in this case, should have some realistic opportunity to pursue discovery or have flexibility in hearing proceedings provided when unnoticed and unexpected technical information is presented where validity factors may determine the result of the hearing. On this record, we find no basis to believe that LL & E knew of this particular simulation study prior to the commencement of the June 1989 hearing and, until the text of the study was available at that hearing, had no opportunity to assess the validity of the factors included in its development.

> [T]here is considerable potential for misuse in reservoir simulation. A modeler so inclined may slant or tilt the simulator in such a manner that the simulator will produce only the results desired by the modeler. The simulator may be affected by the manner in which the underlying programs are written, by the data used, by model manipulation, or by a combination of these. In turn, expert testimony based upon misuse of a reservoir simulation will mislead the trier of fact, rather than assist as required by the Federal Rules of Evidence. Only through complete discovery of all aspects of a party's simulation work can the potential for misuse be avoided.

Lang, *A Primer on Computer Simulation of Hydrocarbon Reservoirs*, XXII Land & Water L.Rev. 119, 133–34 (1987) (footnotes omitted).

---

**4.** Comparable is W:R.Cr.P. 34 which generally provides an interpretive test and application defined as the *Opie* rule, *Opie v. State*, 422 P.2d 84 (Wyo.1967), which is directed to achieve an identical application trial procedure for both criminal and civil cases. Note, *CRIMINAL PROCEDURE—Motion for New Trial Based on Newly Discovered Evidence and Effective Assistance of Counsel: If Counsel is Not Diligent is He Necessarily Ineffective? Frias v. State*, 722 P.2d 135

(Wyo.1986), XXII Land & Water L.Rev. 597 (1987).

**5.** No one questions that "something" had occurred by 1989 since at that time, LL & E reported greatly enhanced production from the Devex 32–11 well and, as a consequence, had voluntarily partially shut down its production.

Another factor makes this case and its present status unusual. Since this is a direct certification case, the W.R.A.P. 12.08 motion filed by LL & E in the district court is now before us for first decision (*nisi prius*) since we are in effect substituted into the initial judicial review by certification by-pass. *Exxon Corp.*, 783 P.2d 685; *Buck Draw Field Area*, 721 P.2d 1070. *See also McKnight*, 764 P.2d at 1047 n. 7.

The specific computer simulation of Dr. Holditch was first brought to the attention of LL & E within the brief period between notice of hearing and its conclusion, and now develops two totally independent review issues. In first instance, LL & E challenges the denial *before the administrative agency* of the motion for rehearing, which issue now provides an operational administrative agency concept. *Utah Power & Light Co.*, 713 P.2d 240. It would be unusual indeed where the authority with the administrative agency does exist, *Hupp v. Employment Sec. Com'n of Wyoming*, 715 P.2d 223 (Wyo.1986), that abuse of discretion would be found if the agency permits or requires contestants to introduce additional information.[6]

In second instance, LL & E also requests that W.R.A.P. 12.08 be applied to provide record supplementation before final appellate review. This decision for the remand presents *a judicial function.*[7] *Matter of*

*State Bank Charter Application of Sec. Bank, Buffalo*, 606 P.2d 296 (Wyo.1980).

Complete disparate considerations are presented in analysis of LL & E's access to augment the record with a response and criticism of the computer simulation. First presented is the administrative agency denial of rehearing under its procedural rules and second is supplementation authority provided to the reviewing court by W.R.A.P. 12.08. The administrative agency action is considered in appellate concept of abused discretion under the provisions of W.S. 16–3–114(c)(ii). That rehearing or supplementation request in denial provides an analysis of abused discretion. *Utah Power & Light Co.*, 713 P.2d 240; *United States v. Pierce Auto Freight Lines*, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). *Cf. Hupp*, 715 P.2d 223.

This court will not be called to decide the administrative agency abuse of discretion inquiry since we will first address *this court's discretion in first instance to provide for supplementation under W.R.A.P. 12.08.* Although little consideration has been given in Wyoming case law to the subject of a reviewing court's discretion under remand provisions similar to W.R.A.P. 12.08, the authoritative language is clearly a broad provision for discretion in providing two criteria and then directing a mandatory implementation. Initially, satisfaction is used in the rule which is, in

---

**6.** We said in *Utah Power & Light Co.*, 713 P.2d at 244:

A rehearing requires a "judgment" by the commission that there is "sufficient reason therefor." A rehearing is in the discretion of the agency and will be interfered with only for a clear abuse of such discretion. *United States v. Pierce Auto Freight Lines*, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); *Interstate Commerce Commission v. Parker*, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945). *See also Vandehei Developers v. Public Service Com'n of Wyoming*, 790 P.2d 1282 (Wyo.1990).

**7.** ANR Production Co. could properly ask why its similar request in *ANR Production Co.*, 800 P.2d 492 was not accorded substantive analysis in that decision where it also asked for record supplementation under W.R.A.P. 12.08. The answer is simple. We found in that decision that the request was untimely filed before the district court and was not presented for *nisi prius*

decision by this court upon certification bypass. In *ANR Production Co.*, 800 P.2d at 496 (emphasis in original), we said:

W.R.A.P. 12.08 provides in pertinent part:
"If, *before the date set for hearing*, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material, and there was good reason for failure to present it in the proceeding before the agency, the court in contested cases shall order that the additional evidence be taken before the agency upon conditions determined by the court.
(Emphasis added.)"
The "plain meaning" principle of interpretation requires us to interpret the phrase *"before the date set for hearing"* in W.R.A.P. 12.08 to mean a motion for additional evidence must be presented *before* the hearing date.
*See similarily Grams v. Environmental Quality Council*, 730 P.2d 784 (Wyo.1986).

reality, discretion in application. This court described in review of W.R.C.P. 72.-1(h), which is the predecessor of the present W.R.A.P. 12.08, in *Matter of State Bank Charter Application of Sec. Bank, Buffalo*, 606 P.2d at 301 (quoting *Johnson v. Schrader*, 502 P.2d 371, 376 (1972), *reh'g* 507 P.2d 814 (Wyo.1973) and emphasis in original):

> "Rule 72.1(h) generally requires that additional evidence be brought before the agency when such is allowed by the district court. However, where if misconduct or fraud has been engaged in by an administrator, the evidence can be taken directly before the Court.
>
> "The decision to allow additional evidence to be presented is not discretionary with the Court; it is mandatory. Such evidence *shall* be presented if (1) the evidence is material; and (2) there is good reason for failure to have presented it in the agency proceedings. A somewhat lesser standard is required *only* in uncontested cases."

Within the satisfaction (discretion) criteria, if *we* find (1) the additional evidence is material, and (2) good reason is provided for nonproduction at hearing, then *we shall* order further agency examination and opportunity for evidentiary presentation. Our first decision, materiality, turns out to be factual in contemplation and the second, essentially legal in consideration of good cause. In order to clarify the status of the law, it is first necessary to identify the argument from submitted briefing and recognize that the good cause inquiry in W.R.A.P. 12.08 is quite dissimilar from the motion for new trial/good cause shown concept of W.R.C.P. 59 and 60 and W.R.Cr.P. 34. Administrative agency proceedings should be less formalized and more flexible than courtroom trials. Inflexibility of supplementation processes in appropriate cases would require extended pre-hearing discovery which would introduce delay and decisional deterrents inappropriate for administrative agency review.

Consequently, we consider our present discretional decision to find good cause in the timing nature of the hearing held and a superintending concept of flexibility with expeditious conclusion while retaining reasonable opportunity in the interest of justice to have a record supplementation. That good cause is found in this case from a clear record that LL & E had not been furnished the computer simulation documentation and analysis at a time in advance of the expeditiously scheduled hearing so that appropriate technical consideration for response could be prepared and given. We determine that responsive testimony regarding the accuracy of the method and validity of the computer simulation is both appropriate and justified. Its weight and validity will remain for further decision with the Commission after analysis in a reconvened hearing. The litigants strenuously contest the "materiality" of any attack that LL & E might make on the Woods Petroleum/Dr. Holditch model and testimony. Obviously, both Woods Petroleum and the Commission originally found materiality in the hearing introduction. We do not have a harmless error ingredient overtly written into W.R.A.P. 12.08, since the level of decision for the judiciary on review is "satisfaction."

Within facets of the administrative agency proceedings, there are principally three groups of evidence upon which the shut down order might have been granted. Evidence from the *ANR Production Co.* hearing which carried over without judicial notice could have been one, the second could be results of the computer simulation model and witness recitation, and finally, all of the other evidence provided at the hearing. Clearly, the computer simulation directed to demonstrative evidence and opinion of communication was in the central core of this hearing and decision. Its relevance is self-evident in examination of the trial transcript without requirement for this court to weigh applied discretional significance. *Matter of State Bank Charter Application of Sec. Bank, Buffalo*, 606 P.2d 296; *Johnson*, 502 P.2d 371.

Pursuant to the provisions of W.R.A.P. 12.08, we order additional evidence to be taken by the Commission in order to permit LL & E to present evidence contradicting or contesting the computer simulation and

supplementary analysis which was prepared by Dr. Holditch and previously introduced by hearing testimony. The Commission and Woods Petroleum may elect to respond for rebuttal by any additional testimony appropriate for the supplementary hearing to be conducted by the Commission.

We will not further address the contentions involving discretion of the Commission to deny rehearing testimonial supplementation. The anomaly is self-evident. By this decision, we address our discretion under W.R.A.P. 12.08 and no justification separately remains to overlay our exercised discretion to consider contested administrative agency abuse discretion. *Vandehei Developers v. Public Service Com'n of Wyoming,* 790 P.2d 1282 (Wyo.1990); *Utah Power & Light Co.,* 713 P.2d 240. It is singularly apparent that the review process and flexibility provided to the reviewing court is considerably broader under W.R.A.P. 12.08 than is appellate review under W.S. 16–3–114(c)(ii). *See Matter of State Bank Charter Application of Sec. Bank, Buffalo,* 606 P.2d 296. Compare the final order cases, *Public Service Commission v. Lower Valley Power & Light, Inc.,* 608 P.2d 660 (Wyo.1980) and *Big Horn County Com'rs v. Hinckley,* 593 P.2d 573 (Wyo. 1979).

We remand the case to the administrative agency for further proceeding in accord herewith. We do not retain jurisdiction. Any future review after completion of the additional hearing required will be addressed again to the district court which may elect to decline direct certification.

Remanded to the administrative agency for further proceeding.