Susan E. HEISS and William N. Heiss,
Appellants (Petitioners),

v.

CITY OF CASPER PLANNING AND
ZONING COMMISSION, Appellee
(Respondent).

No. 96–146.

Supreme Court of Wyoming.

June 19, 1997.

Susan E. Heiss and William N. Heiss, pro se.

W. Jackson Stewart, Casper City Attorney, and Loyd E. Smith, Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Appellants Susan and William Heiss (Heisses) appeal the order affirming a conditional use permit granted by the City of Casper Planning and Zoning Commission (Commission). We reverse and remand to the district court with instructions to remand to the Commission.

The Heisses present the following issues:

A. Whether the decision by the Casper Planning and Zoning Commission (the "Commission") in Case No. CU–95–006 (the "Case") was "supported by substantial evidence" when there was no evidence or testimony presented by the applicant in that case.

B. Whether the Commission complied with the applicable provisions of the City of Casper Zoning Ordinance ("Ordinance") in making its decision in the case.

C. Whether the grant of a conditional use permit in the Case effectively rezoned the subject property without complying with the provisions of the applicable zoning ordinances.

The Commission states the issues:

1. Whether the decision of the City of Casper Planning and Zoning Commission granting a Conditional Use Permit to allow an off-street parking lot in a R–4 Zone was supported by substantial evidence[.]

A. Whether the Planning and Zoning Commission complied with the applicable provisions of the City of Casper Zoning Ordinance in making its decision[.]

B. Whether Appellants waived all issues concerning the conditional use except whether to locate a curb cut on Gannett Street[.]

2. Whether the grant of the Conditional Use Permit effectively rezoned the subject property[.]

### FACTS

Luker Realty filed a petition for a conditional use permit to allow an off-street parking lot in a high density residential zone. The land adjoining the subject property to the north was zoned commercial highway business, and Luker Realty sought the conditional use permit to provide parking for development of that commercial lot. Access to the commercially zoned area exists to the north and east of the commercial lot. The petition proposed a curb cut on Gannett Street to provide for southern access to the commercial lot through the subject property.

Gannett Street runs on the south side of the subject property. South of Gannett, the property is zoned for single unit residences. The property lying to the west and to the east of the subject property is zoned for planned unit development and general business. Diagonally from the subject property, across a three-way intersection, is a neighborhood park.

The Commission is required to hold a public hearing on all conditional use permits, and all real property owners within a three hundred foot radius of the perimeter of the property in question must receive notice of the public hearing. The Heisses are real

property owners within the three hundred foot radius perimeter.

The Commission received written comments. Betty Luker, president of Luker Realty, submitted a letter in support of the permit. Two groups of landowners submitted identical petitions, one signed by landowners within the three hundred foot radius and the other by landowners outside the three hundred foot radius. Both petitions premised their support of the permit on the condition, among others, that there be no curb cut on Gannett Street. Several landowners, including the Heisses, submitted additional written comments emphasizing the need to preclude the curb cut. Gary Freel, Casper's Zoning and Code Enforcement Officer, recommended approval of the conditional use permit, also with the condition to exclude the Gannett Street curb cut.

The Commission held the public hearing and subsequently issued its order, granting the conditional use permit and allowing the curb cut on Gannett Street. The Heisses petitioned the district court for review, and the court affirmed the order. This timely appeal follows.

## DISCUSSION

### Standard of Review

Wyoming Rules of Appellate Procedure 12 provides for judicial review of agency actions. Rule 12.09(a) limits the extent of review to determination of matters specified in W.S. 16-3-114(c). That statute requires reviewing courts to hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]

\*  \*  \*  \*  \*  \*

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

W.S. 16-3-114(c)(ii). We review the agency decision de novo, according no deference to the district court's decision. *Campbell v. Dep't of Family Serv.*, 881 P.2d 1066, 1068 (Wyo.1994).

Our task is to examine the entire record to determine if substantial evidence exists to support the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner if his decision is supported by substantial evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Romero v. Davy McKee Corp.*, 854 P.2d 59, 61 (Wyo.1993). In reviewing questions of law, however, we do not defer to the agency's decision. If the conclusion of law is in accordance with law, we affirm it; if it is not, we correct it. *Aanenson v. State ex rel. Worker's Compensation Div.*, 842 P.2d 1077, 1079 (Wyo.1992).

### Substantial Evidence

The Heisses contend that substantial evidence does not exist to support the Commission's decision to grant the conditional use permit with a curb cut on Gannett Street. The Commission's decision is embodied in its Findings of Fact No. 6, which states:

The proposed use of this residential site (R-4), for off-street parking purposes, is considered consistent with the spirit and intent of the Zoning Ordinance, and the Commission further finds that the proposed use will not substantially impair the appropriate use of neighboring property because the parking lot will be buffered from the residential area and only a portion of the traffic to and from the lot will access through the residential area of this neighborhood, thereby producing only minimal additional traffic.

The only evidence we found in the record which supports the Commission's decision is a letter from the applicant, Betty Luker, who was not present at the hearing, and the following comments made by Commission members:

Rudkin: \* \* \* I have a couple of points. \* \* \* [T]hose two squares to the north of the parking lot will perhaps contain buildings and that will break up the distance that the gentleman was talking about. That also will create a little bit of a problem, as far as that parking lot is concerned, because all of the traffic that goes in and

out of that parking lot will funnel through between those two establishments in the future, if they exist. Seems to me that this might create a bottleneck without a curb cut on Gannett Street.

Jarvis: It's already a bottleneck. * * * Well the turn into the Safeway parking is already a bottleneck the way it is. I think with two more businesses in the area, we need another way to get out. I can understand the concern about adding more traffic on Gannett, but I can also see the way the traffic flows you can't expect them to dead-end.

Barrett: Members of the Commission, I might add the cut you see at Key bank, the curb cut there, will possibly be utilized when we actually have a site plan for the restaurant.

Jarvis: Without a site plan, we are at a great disadvantage.

Barrett: Also, the curb cut on Gannett primarily would be for the residents that live in that area. People accessing the site are not going to utilize that.

Crowd says—we don't want it.

Barrett: If you look at the configuration of it[,] that is representative if you look at the traffic flow out of there. But the two cuts in the primary secondary curb cut would probably be utilized if it's a restaurant, by the one at Key Bank, which is a shared access there.

The Commission's speculation just prior to the decision reflects the inherent problems in reaching a decision without sufficient material evidence:

Rudkin: Assuming you'd have an apartment in there, how would you get into and out of it?

Zukin: You'd have a curb cut, but you'd have a different kind of traffic going in and out of there. You'd have a different view from the other side of the street.

Sasser: Yes. But you'd still have possibly the same amount of traffic, cause I mean the apartments could generate as much traffic flow as anything else.

Audience: No way!

　*　　*　　*　　*　　*　　*

Zukin: I think there's a difference between looking down on a parking lot and looking down on an apartment complex or condominiums. Is there any other discussion to this amending motion? This motion then is to amend the original motion and allow a curb cut on Gannett. Janet, would you call the roll please? [Motion passes four to two.]

We have previously stated that it is

essential to surviving judicial review that the record of a contested agency action contain such factual findings as would permit a court to follow the agency's reasoning from the evidentiary facts on record to its eventual legal conclusions. Similarly, we have held that a contested case hearing must provide, and the record of that proceeding must document, information sufficient to the making of a reasonable decision. Absent such information, the agency decision must be set aside as arbitrary.

*Jackson v. State ex rel. Workers' Compensation Div.*, 786 P.2d 874, 877 (Wyo.1990) (citations omitted); *see also Mekss v. Wyoming Girls' Sch.*, 813 P.2d 185, 201 (Wyo.1991).

■ The Commission argues its decision is supported by evidence of the characteristics of the surrounding properties, Doug Barrett's recommendation from the planning and development staff and the minutes and transcript from the hearing. Although we agree that the characteristics of the surrounding properties are relevant, we find the record contains no evidentiary facts to support the Commission's finding that granting the permit with the curb cut on Gannett Street will "produc[e] only minimal additional traffic." Finding of Fact No. 6.

In asserting that its discussions at the hearing constitute substantial evidence, the Commission cites *School Dist. No. 9 v. Dist. Boundary Bd.*, 351 P.2d 106, 113 (Wyo.1960), for the proposition that an agency can draw on its own knowledge and staff reports in reaching its decision. The only staff recommendation in the record, however, is Gary Freel's report, and it does not support the Commission's Finding of Fact No. 6 because it advised the Commission to approve the conditional use permit without allowing a curb cut on Gannett Street. His report re-

flects that the evidence of the surrounding property use, namely the residential neighborhood on the other side of Gannett Street, warranted exclusion of the curb cut.

As for the hearing transcript, the Wyoming Administrative Procedure Act (WAPA), § 16–3–107(r), expressly requires that "[f]indings of fact shall be based exclusively on the evidence and matters officially noticed." Administrative agencies possess the same ability as courts to take judicial notice of adjudicative facts. *Application of Campbell County,* 731 P.2d 1174, 1180 (Wyo.1987). The WAPA makes clear that in order for an agency to effectively take official notice, it must inform the parties and give them an opportunity to respond. Section 16–3–108(d) of the WAPA prescribes that:

> Notice may be taken of judicially cognizable facts. In addition notice may be taken of technical or scientific facts within the agency's specialized knowledge or information, data and material included within the agency's files. The parties shall be notified either before or during the hearing or after the hearing but before the agency decision of material facts noticed, and they shall be afforded an opportunity to contest the facts noticed.

*See also Louisiana Land & Exploration Co. v. Oil & Gas Conservation Comm'n,* 809 P.2d 775, 778 (Wyo.1991). Here, nothing in the record indicates that the Commission was taking official notice of the traffic situation in the area.

Even if the Commission had officially noticed facts regarding the traffic in that area, judicial notice is improper in this situation for two reasons. First, an evidentiary basis must exist in the record before an agency can take judicial notice of an adjudicative fact. In *Nuspl,* we said that to evaluate the propriety of taking judicial notice, "[t]he question always to be answered is whether the court has in fact embodied in its findings or opinion an adjudicative fact not found in or supported by the formal evidence in the case * * *." *Nuspl v. Nuspl,* 717 P.2d 341, 343 (Wyo.1986) (*quoting* Louisell and Mueller, FEDERAL EVIDENCE § 58, at 449 (1977)). *Cf. Hansen v. Mr. D's Food Center,* 827 P.2d 371, 374 (Wyo.1992) ("an adminis-trative agency may take judicial notice of materials in their files if that is, in fact, done on the record"). The Commission's discussion of the traffic in the area was neither based on cognizable facts in the formal evidence of the case nor on technical or scientific facts within the agency's specialized knowledge. Thus, the Commission could not have officially noticed the information it cites as support for its decision.

Second, the possible impact of granting a conditional use permit on traffic in an area is not the type of adjudicative fact of which a trial court or administrative agency should take judicial notice. *Cf. Kennedy v. Kennedy,* 761 P.2d 995, 998 (Wyo.1988) (holding erroneous the application of judicial notice of a land value). Wyoming Rule of Evidence 201(b) limits the type of adjudicative fact of which a court may take judicial notice:

> Kinds of facts.—A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

The impact of granting a conditional use permit on traffic is neither readily determined by resort to sources whose accuracy cannot be reasonably questioned, nor is it a fact generally known within the jurisdiction. It would, therefore, be an improper adjudicative fact for judicial notice.

The reason an agency must create a record of material and substantial evidence is, "so that a reviewing court can determine whether such factual development occurred or whether, instead, the agency's actions were based on unwarranted or undeclared assumptions." *Jackson v. State ex rel. Workers' Compensation Div.,* 786 P.2d at 877. We hold that the Commission's Finding of Fact No. 6 is based on unwarranted assumptions; and we, therefore, set the agency's decision aside as unsupported by substantial evidence.

### Compliance with the Ordinance

The Heisses assert the Commission's decision is arbitrary because the Commission did not consider all relevant factors required by Casper Zoning Ordinance 17.12.240. This issue is closely related to the first issue because failure to consider relevant factors is indicative that the Commission lacked substantial evidence. Subsections (G) and (H) prescribe the factors the Commission must consider in deciding whether to issue a conditional use permit:

(G) No conditional use permit shall be granted unless the commission finds:

1. The conditional use is consistent with the spirit, purpose, and intent of this title; will not substantially impair the appropriate use of neighboring property; and will serve the public need, convenience, and welfare;

2. The conditional use is designed to be compatible with adjacent land uses and the area of its location.

(H) In making its findings, the commission shall consider any relevant factors, including, but not limited to, the following, if applicable to the proposed use:

1. Area and height to be occupied by buildings or other structures;

2. Density for the proposed use in terms of units per acre and the number of offices, employees, occupants, or all three;

3. Volume of business in terms of the number of customers per day;

4. Increased traffic congestion or hazard caused by the use which may be over and above normal traffic for the area, as determined by the city engineer and planning director;

5. Location of use with respect to the same or similar uses within a three hundred foot radius of the perimeter of the described property;

6. Any other criteria affecting public health, safety, and welfare, as provided for by written rules of the commission.

At the time of the hearing, neither the Commission nor the applicant knew what type of business would occupy the adjoining property. The six factors enumerated in the ordinance reflect a legislative intent that the Commission's decision be based on specific information like the type of use (factor 5), the volume of business (factor 3) and its impact on the traffic in the area (factor 4).

▮ In this case, the applicant did not submit evidence regarding traffic and the Commission did not solicit a determination by the city engineer and planning director to support the curb cut on Gannett Street. The record reflects that traffic considerations were "applicable to the proposed use" because the Heisses and others presented considerable evidence in opposition to the curb cut based on traffic concerns.[1] We have previously held that "[a]n agency action is arbitrary or capricious if it is not based on a consideration of the relevant factors." *Tri-State Generation & Transmission Ass'n, Inc. v. Environmental Quality Council*, 590 P.2d 1324, 1330–31 (Wyo.1979); *see also Knight v. Environmental Quality Council*, 805 P.2d 268, 273 (Wyo.1991). Thus, in failing to consider a determination "by the city engineer and planning director" as prescribed by subsection (H)(4) of the ordinance, we hold as a matter of law that the Commission acted arbitrarily.

### CONCLUSION

The Commission's decision was not in accordance with law, and Finding of Fact No. 6

---

1. For example, appellant Bill Heiss testified at the hearing that:

This street has a jog in it right here. If you come around this corner and you want to turn on to Gannett or continue on this way, you cannot see beyond this point until you've gotten quite a ways down the street. I mean there is a real safety issue here. This one shows it more clearly, that other one wasn't an accurate plat. When you turn off this street you can't see this point until you get to the corner by Key Bank, and there are many people who are turning off of Wyoming Boulevard onto Shannon who almost get hit here. We've had several accidents at this point because they turn here before they can see the length of Gannett Street and so we think it's imperative that the recommendation of no access and no curb cut be followed because there is a real safety issue, besides the high rate of speed used going down these streets. The visual aspect of being able to see here is really important.

is unsupported by substantial evidence. We reverse the district court's order and remand the case to the district court with instructions to remand to the Commission. As we are remanding for a new hearing, we decline to reach other issues presented in this appeal.

Reversed and remanded.